196 N.J. Super. 122 (1984)
481 A.2d 830
DEPARTMENT OF LABOR, PETITIONER-RESPONDENT,
v.
SAMUEL BERLANTI, RESPONDENT-APPELLANT, AND SUFFOLK COUNTY CONTRACTORS, INC., RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 7, 1984.
Decided June 8, 1984.
*123 Before Judges ARD, MORTON I. GREENBERG and TRAUTWEIN.
Patrick F. McAndrew argued the cause for appellant (John J. Pribish, attorney; Patrick F. McAndrew, on the brief).
Lewis A. Scheindlin, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Lewis A. Scheindlin, on the brief).
The opinion of the court was delivered by TRAUTWEIN, J.A.D.
Appellant, Samuel Berlanti, president of Suffolk County Contractors, Inc., appeals from a final decision of the Commissioner of Labor placing him on a list of contractors and subcontractors (including Suffolk) debarred from bidding for public works contracts for a period of three years because he failed to pay his workers the prevailing wage pursuant to N.J.S.A. 34:11-56.37 and 34:11-56.38, while completing a public works contract for the construction of a sanitary sewer collector system for Wall Township.
The main question in this appeal is novel. Does the debarment provision of the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25, et seq., apply to individuals who are the corporate officers of the offending corporate contractor or subcontractor? In this connection appellant raises five issues: Whether there is statutory authority to support the debarment of corporate officials responsible for paying the prevailing wage; whether the commissioner's interpretation of the statute so as to permit corporate official debarment constitutes an improper amendment of the prevailing wage act; whether the commissioner's debarment of a corporate officer was invalid *124 because no administrative regulations cover such a proceeding; whether Berlanti's right to due process was violated by the debarment procedure and whether the "proven facts" support Berlanti's debarment.
The facts in this case are undisputed.
On June 15, 1978 Newark Construction, Inc., was awarded a public works contract in the amount of nearly one and a half million dollars by the governing body of Wall Township for the purpose of constructing a sanitary sewer collector system. United States Fidelity and Guarantee Company (USFG) was the surety on the contract and it executed a performance bond for the contract amount. Respondent Suffolk County Contractors, Inc. (Suffolk) was a subcontractor of Newark Construction, Inc. which worked on the project in January 1980. When Newark Construction defaulted on the contract, USFG was required to complete the job. Suffolk completed the project acting as USFG's subcontractor. Suffolk's employees worked on the project in June and July 1980. USFG paid Suffolk on a time and material basis, plus 20%.
An investigation of Suffolk's payment practices was instigated by a complaint made by one of Suffolk's employees to the public contracts section of the office of wage and hour compliance of the New Jersey Department of Labor. Michael McCarthy, a field representative with the public contract section, asked Suffolk for its payroll records on the Wall Township sewer collector system project. He compared the wage rates listed on the payroll records with the prevailing wage rate determinations for Monmouth County as of March 1, 1979, issued by the Department of Labor, and found that twenty workers were underpaid. According to McCarthy's calculations, Suffolk owed these employees a total of $5,418.43 in unpaid wages. On January 9, 1981 Suffolk was sent a "Statement of Amounts Indicated as Due Employees" which reflected McCarthy's calculation.
*125 On February 25, 1982 Rodger Bodman, New Jersey Commissioner of Labor, filed a complaint against Suffolk and USFG on behalf of Suffolk's employees in the Superior Court, Law Division, seeking payment of the unpaid prevailing wages due those employees with respect to the Wall Township project. Samuel Berlanti was not individually named as a defendant in the commissioner's suit. Cross-motions for summary judgment were made by the parties. Based on the pleadings, briefs and affidavits submitted to the court, Judge Yaccarino entered an order for summary judgment in petitioner's favor on February 14, 1983 finding Suffolk and USFG jointly liable to the commissioner in the amount of $5,418.43; denied USFG's cross-motion for summary judgment and directed that USFG indemnify Suffolk for any and all payments made with respect to this action.
Both USFG and Suffolk appealed to the Appellate Division. These separate appeals were consolidated and by decision dated October 18, 1983 we affirmed Judge Yaccarino's order as set forth above. Roger Bodman, Commissioner of Labor v. Suffolk County Contractors, Inc. and United States Fidelity & Guaranty Company; Roger Bodman, Commissioner of Labor, State of New Jersey v. Suffolk County Contractors, Inc. and United States Fidelity & Guaranty Company; Appellate Division Docket Nos. A-3192-82T3' A-3355-82T3 (Consolidated).
In the meantime, in a letter dated August 18, 1982, Leonard Katz, supervisor of the public contract section, informed Berlanti that the investigation revealed that Suffolk had failed to pay prevailing wages to employees who performed work on six different public works projects, one of which was the Wall Township sewer collector system. Katz informed Berlanti that both his name and Suffolk's name would be placed on a list of debarred contractors and subcontractors pursuant to N.J.S.A. 34:11-56.38 but that Berlanti and Suffolk had the right to apply to the commissioner for a hearing (under N.J.S.A. 34:11-56.37) *126 if they denied that a failure to pay the prevailing wage had occurred.
Berlanti requested a hearing. On August 27, 1982 the matter was transferred as a contested case to the Office of Administrative Law. The department moved for a summary decision and oral argument was held before Administrative Law Judge Joseph Fidler on March 18, 1983. Judge Fidler rendered a written decision on April 29, 1983 wherein he found that appellant had raised no material fact issues and thus summary decision was appropriate. He rejected appellant's contention that there was no privity of contract between Suffolk and the township and that no public funds had been expended to complete the construction of the sewer collector system. The judge found that even though USFG may have only received retainages from the township which had already been earned by Newark Construction Company, the fact remained that public funds were expended by the township on a sewer construction job, thus bringing the project within the purview of the prevailing wage act. He further found that the lack of privity of contract between Suffolk and the township was immaterial since it was undisputed that Suffolk's employees were hired to complete a public works project and thus were entitled to receive prevailing wages according to the statute. Since Suffolk had not denied that incorrect prevailing wages were paid, the administrative law judge concluded that the Department of Labor's motion for summary decision should be granted and that respondents should be debarred from public works contracts for three years as required by N.J.S.A. 34:11-56.38.
There was no formal decision from the Commissioner of Labor accepting the administrative law judge's finding and conclusion. The final decision was embodied in a letter dated June 17, 1983 from Leonard Katz to Berlanti which recited that, "in accordance with the Order of Judge Joseph F. Fidler," he had been placed on a list of contractors and subcontractors who had failed to pay the prevailing wage and thus he was ineligible for an award of a public works contract as was any firm, *127 corporation or partnership in which he had an interest for the next three years. This appeal followed.
We note that Suffolk is not disputing the determination that it should be placed on the debarment list. The focus of this appeal is upon the debarment of the corporate president, Berlanti. Berlanti argues that there is no statutory authority for the commissioner's action and that there were no facts adduced at an appropriate proceeding to justify imposition of liability upon Berlanti for the corporation's dereliction.
It is a basic tenet of corporate law that a corporation is an entity separate and distinct from its stockholders. Only upon proof of fraud or injustice will the corporate veil be pierced to impose liability on the corporate principals. Lyon v. Barrett, 89 N.J. 294, 300 (1982); Frank v. Frank's, Inc., 9 N.J. 218, 224 (1952). The party seeking an exception from the fundamental principle that a corporation is a separate entity bears the burden of proof and must demonstrate the misuse of the corporate form and the necessity of disregarding it in order to do equity. Kugler v. Koscot Interplanetary, Inc., 120 N.J. Super. 216, 254-255 (Ch.Div. 1972).
There is no question that a court of law may, in the appropriate case, apply the doctrine of piercing the corporate veil in order to reach a fair and just result. Our research, however, has failed to disclose any reported decisions permitting an administrative agency to apply the same doctrine to matters before it. Our research of decisions in sister states reveals that only Florida has squarely faced this question. In Roberts' Fish Farm v. Spencer, 153 So.2d 718 (Fla.Sup.Ct. 1963), involving a claim for workmen's compensation benefits, the Florida Industrial Commission awarded compensation not only against Tropical Fish Inc. for whom the claimant actually worked as an employee, but also against Florida Fish Farm and Roberts' Fish Farm, all three corporations having common officers and stockholders. On appeal, the Supreme Court of Florida held that the Florida Industrial Commission did not *128 have jurisdiction to disregard the corporate entity of Tropical Fish, Inc. In this connection it held:
We hold that the Florida Industrial Commission acting either through the Full Commission, or a deputy, has no jurisdiction to disregard the legal existence of a corporation as was attempted in this case. If a claimant employed by a duly organized and existing corporation is to pierce the corporate veil and saddle responsibility for his claim on the stockholders or others associated with the corporate employer he must do so in an appropriate action in a court of equity or law.
While this holding may lengthen the legal road which a claimant may have to travel in order to obtain satisfaction of a compensation award in a case where the corporate entity ought to be set aside it does not deny him recovery if he can show, on issues properly framed in a court of competent jurisdiction, that the corporate entity should be disregarded. This is no more than any other creditor or litigant is required by our decisions to do in order to recover in such a case. [Id. at 721]
The court went on to emphasize that the corporate entity is a well used, highly regarded and accepted form of organization in the economic life of the nation. Thus, absent a showing that the corporation was formed or used for some illegal or fraudulent purpose, the corporate veil would not be pierced. Because persons who utilized the state laws to do business in the corporate form had a right to rely on the rules of law applicable to that form, the courts of Florida "are reluctant to pierce the corporate veil and will do so only in a court of competent jurisdiction, after notice to and full opportunity to be heard by all parties, and upon showing of cause which necessitates the corporate entity being disregarded in order to prevent some injustice." Ibid. Cf. Central La. Elec. Co. v. La. Public Service, 373 So.2d 123 (La.Sup.Ct. 1979) and Tenn. Public Serv. Com'n v. Nashville Gas Co., 551 S.W.2d 315 (Tenn.Sup.Ct. 1977), cert. den. 434 U.S. 904, 98 S.Ct. 301, 54 L.Ed.2d 191 (1977) (public utility rate cases where the corporate veil was pierced) and see Johnson & Higgins of Miss., Inc. v. Commissioner of Ins., 321 So.2d 281 (Miss.Sup.Ct. 1975) (licensure of an insurance company where corporate entity was disregarded).
Three other jurisdictions permit their liquor control boards to go behind the corporate form when investigating the eligibility of licensees or potential licensees. In this connection see Jules, *129 Inc. v. Boggs, 270 S.E.2d 679 (W. Va.Sup.Ct.App. 1980); Number Three Lounge v. Alcohol Bev. Control, 387 N.E.2d 181 (Mass. Ct.App. 1979); and Palm Gardens, Inc. v. Oregon Liquor Control Com'n, 150 Or. App. 20, 514 P.2d 888 (1973). Our analysis of these cases, however, discloses a common thread. Where an administrative agency was permitted to ignore the corporate entity, the decision was based upon some statutory or regulatory authority justifying the agency's inquiry into the ownership of the particular corporation. Furthermore, in each instance the corporate veil was pierced only after a hearing during which this information was elicited. In the matter before us these two elements (statutory authority and a plenary hearing) are both lacking.
Two of the provisions of the Prevailing Wage Act are pertinent to this case. The first is N.J.S.A. 34:11-56.37 which requires the commissioner of labor to maintain a list of those contractors or subcontractors who have failed to pay the prevailing wage to their employees who labored on a public works project. Specifically the statute provides that
In the event that the commissioner shall determine, after investigation, that any contractor or subcontractor has failed to pay the prevailing wage he shall thereupon list and keep on record the name of such contractor or subcontractor and forthwith give notice by mail of such list to any public body who shall request the commissioner so to do. Where the person responsible denies that a failure to pay the prevailing wage has occurred, he shall have the right to apply to the commissioner for a hearing which must be afforded and a decision rendered within 48 hours of the request for a hearing. If the commissioner rules against the petitioning party he shall have the right to apply for injunctive relief in the Superior Court against the listing by the commissioner.
N.J.S.A. 34:11-56.38 is the debarment provision which prohibits any public entity from awarding a contract to any contractor or subcontractor on the list for three years after the contractor or subcontractor has been listed. This provision recites that:
The public body awarding any contract for public work or otherwise undertaking any public work shall first ascertain from the commissioner the list of names of contractors or subcontractors who have failed to pay prevailing wages as determined in section 14 of this act, and no contract shall be awarded to such contractor or subcontractor, or to any firm, corporation or partnership in which such contractor or subcontractor has an interest until 3 years have elapsed *130 from the date of listing as determined in section 14 of this act [34:11-56.38] [Footnote omitted.]
Nothing in either of those two provisions expressly permits the commissioner of labor to ignore the corporate existence of a contractor or subcontractor in order to place a corporate official on the debarment list. The commissioner of labor, however, argues that such authorization is implicit in the language of N.J.S.A. 34:11-56.37. It is the State's position that the Legislature's reference to "the person responsible" and the subsequent use of the pronoun "he" means that the Legislature intended to make corporate officers culpable for the failure of the corporation to pay the prevailing wage. We disagree. In our view the commissioner's interpretation stretches the rules of statutory construction to the breaking point.
In the first place, there is nothing ambiguous about N.J.S.A. 34:11-56.37 which would justify a court's imposition of interpretative analysis upon that provision. Notably the State does not press any point that the statute is ambiguous. The State claims that what the Legislature intended by reference to the contractor, subcontractor and "person responsible" was to place liability for the failure to pay the prevailing wage upon three classes of persons, one of whom is the corporate official responsible for paying wages where a corporation is concerned.
But this analysis ignores a basic tenet of statutory construction, namely, where there is no ambiguity the words are to be given their ordinary meaning. The most common sense way to read N.J.S.A. 34:11-56.37 is that the Legislature intended that the commissioner list and keep a record of any "contractor or subcontractor" who fails to pay the prevailing wage. A subcontractor or contractor can be an individual or a corporation. If a corporation, obviously that legal entity could not on its own defend itself by denying the charge. Therefore, the Legislature provided that "the person responsible" in the corporation, or the individual contractor or subcontractor, had the right to defend himself or itself by denying the charge and then applying *131 for a hearing, followed by the right to apply for injunctive relief if unsuccessful at the hearing. It seems to us that the reference to "the person responsible" was only for purposes of setting up a procedure whereby the contractor or subcontractor charged with the violation would be able to vindicate himself or itself before the agency in the first instance and subsequently, in the Superior Court. We see nothing in N.J.S.A. 34:11-56.37 to suggest that a corporate official could be debarred as well as the corporation which he heads.
Of even greater significance is that in N.J.S.A. 34:11-56.38, the debarment section, the Legislature referred only to the "contractors or subcontractors who have failed to pay prevailing wages as determined in" the previous section. It was only those contractors or subcontractors who were barred for three years from obtaining future public works contracts. In the debarment provision itself there is absolutely no hint that a corporate official could suffer the same fate in his individual capacity as a result of a corporation contractor's or subcontractor's violation.
The State further argues that to prohibit the commissioner from debarring a corporate official would do violence to the express purpose of the New Jersey Prevailing Wage Act as set forth by the Legislature in N.J.S.A. 34:11-56.25. In that statutory provision the Legislature
... declared to be the public policy of this State [the establishment of] a prevailing wage level for workmen engaged in public works in order to safeguard their efficiency and general well being and to protect them as well as their employees from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and well being.
The State reasons that, if a corporate official responsible for a contractor or subcontractor's omission to pay the prevailing wage is not also included on the debarment list, he could simply remove himself from the offending corporation and form a new corporation which would not be debarred and obtain a public *132 works contract upon which he could again fail to pay his workers the prevailing wage. That may well be true, but we fail to perceive how that situation does violence to the declared public policy set forth in N.J.S.A. 34:11-56.25. Certainly those workers, were they to be cheated by the corporate official's new corporation, would still have the right under the Prevailing Wage Act to complain to the commissioner of labor and obtain the difference in the wages paid them and the wage level set out by the State as being the prevailing wage. The worker is protected under all circumstances regardless of who the contractor, subcontractor or corporate official of a contractor or subcontractor is.
Moreover, even if the Prevailing Wage Act could be read to provide authority for the commissioner to disregard a corporate entity and to reach a corporate official for debarment purposes, interests of fundamental fairness and due process would require some type of proceeding wherein the corporate official's relationship to the corporation could be determined. Certainly not any corporate official could be subject to debarment; only the corporate official responsible for seeing that the prevailing wages were paid to the corporate employees could be debarred. In the present case, there was no such proceeding wherein evidence of Berlanti's relationship to the corporation was established by competent evidence.
We conclude there is nothing within the statutory scheme which authorizes or justifies the commissioner's piercing the corporate veil of Suffolk County Contractors, Inc. in order to debar its president from obtaining future public works contracts.
In view of the foregoing, it is unnecessary for us to address the remaining contentions of appellant regarding reversible error.
Reversed.