DEPARTMENT OF LABOR, RESPONDENT, v. TITAN CONSTRUC-
TION COMPANY, THOMAS TSILIVITIS, GEORGE SARIOTIS,
AND GUS SMILIOS, APPELLANTS.

Argued May 6, 1985—Decided October 17, 1985.

1

*Thomas J. Hirsch* argued the cause for appellants (*Crawford & Hirsch*, attorneys).

*Lewis A. Scheindlin*, Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *James J. Ciancia*, Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

STEIN, J.

The New Jersey Prevailing Wage Act (Act), *N.J.S.A.* 34:11–56.25 to –56.46, expressly authorizes the Commissioner of Labor (Commissioner) to debar from public contracting work for a period of three years any contractor or subcontractor that has failed to pay its employees the prevailing wage for work performed under a contract with a public body. *N.J.S.A.* 34:11–56.37. In this case we must determine whether the Commissioner also possesses the authority to debar those individuals who serve as corporate officers of offending contracting or subcontracting entities. The Appellate Division affirmed the Commissioner's debarment of three corporate officers of Titan Construction Company (Titan), a debarred contractor. We granted certification, 99 *N.J.* 238 (1985), in order to resolve the conflict between that decision and the decision in *Department of Labor v. Berlanti*, 196 *N.J.Super.* 122 (App.Div.1984), in which another Appellate Division panel concluded that the Act did not authorize the Commissioner's debarment of individual corporate officers.[1]

I

In October, 1982, Titan entered into a contract with the Middletown Township Board of Education (Middletown) for roofing work on the New Monmouth School.

An investigation of the Middletown project by the New Jersey Department of Labor (Department) indicated that Titan had failed to pay the prevailing wage to a number of workmen on the project. Three of the eight workmen not properly compensated were Titan's sole officers and owners. Although these men had worked as roofers on the project, they did not receive the roofers' prevailing wage of $20 per hour for their work. In addition, payroll records indicated that Titan had

---

[1] Samuel Berlanti died in December, 1984, after this Court granted the Commissioner's petition for certification. 99 *N.J.* 151 (1984). We have dismissed that appeal as moot. 101 *N.J.* 568 (1985).

failed to pay other workmen the proper overtime rates for weekend work and that still other workmen had received less than the prevailing wage rate as a result of Titan's failure to comply with the required roofer-to-helper ratio established in roofers' collective bargaining agreements.

In May, 1983, the Public Contracts Section of the Department's Office of Wage and Hour Compliance notified Titan and its principals that they had violated the Act in connection with five separate public work projects,[2] and that the names of Titan and its officers would be placed on the list of debarred contractors unless they filed a request for a hearing within twenty days.

Titan denied the violations and the Department treated this denial as a request for a hearing, transferring the matter to the Office of Administrative Law as a contested case. The Department filed a motion for a summary decision, based solely on the Middletown violations. Although Titan conceded that it had not paid prevailing wage rates to its principals who had indeed worked as roofers on the Middletown project, Titan nonetheless contended that the Act does not require that principals of corporations pay themselves the prevailing wage. The Department argued that the purpose of the Act is to ensure that all bidders on public contracts pay all their workmen the prevailing wage, and that small contractors whose principals perform manual labor should not be exempt from this requirement.

In an initial decision, the Administrative Law Judge (ALJ) granted the Department's request for a summary decision and debarred both Titan and its officers for failing to pay these officers the prevailing wage for the physical labor they had performed as roofers on the Middletown project. With regard to the other alleged violations on the Middletown job, the ALJ found the proofs insufficient to permit summary decision and resolution of those issues was deferred for a plenary hearing.

---

[2]Although the Department found prevailing wage violations at five projects, only the violations at the Middletown project are involved in this appeal.

Titan filed exceptions to the initial decision as well as a request to reopen the record. In December, 1983, the ALJ's recommended decision became final,[3] and the Department notified Titan and its principals that they were being placed on the list of debarred contractors. The Department refused Titan's request for a stay of debarment pending appeal.

In February, 1984, the Appellate Division denied Titan's motion for a stay of debarment pending appeal. This Court reversed the Appellate Division, granted the stay, and directed the Appellate Division to accelerate its consideration of the appeal. In November, 1984, the Appellate Division summarily affirmed the ALJ's decision in a per curiam opinion, noting, however, that another appellate panel had reached a different conclusion in *Department of Labor v. Berlanti, supra,* 196 *N.J.Super.* 122.

## II

The New Jersey Prevailing Wage Act was adopted in 1963. *L.*1963, *c.*150. It was intended to protect both employers and employees from unfair competition caused by low wages:

> It is declared to be the public policy of this State to establish a prevailing wage level for workmen engaged in public works in order to safeguard their efficiency and general well being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and well-being. [*N.J.S.A.* 34:11–56.25.]

The Act requires that every public-work contract in excess of $2000, to which any public body is a party, must provide that workmen employed to perform the contract be paid at least the prevailing wage rate. *N.J.S.A.* 34:11–56.27. The Act defines "public body" to include the State of New Jersey, its agencies, authorities, or political subdivisions. *N.J.S.A.* 34:11–56.26(4). The Act defines "prevailing wage" as "the wage rate paid by virtue of collective bargaining agreements by employers employing a majority of workmen of that craft or trade subject to

---

[3]The Commissioner's adoption of the ALJ's recommended decision had the effect of denying the request to reopen the record. *See N.J.S.A.* 52:14B–10(c), *N.J.A.C.* 1:1–16.4(e), –16.5(d), and discussion *infra* at 19.

said collective bargaining agreements, in the locality in which the public work is done." *N.J.S.A.* 34:11–56.26(9).

The Commissioner is empowered to establish the prevailing wage rate on the basis of the collective bargaining agreements covering the majority of workers for a particular craft or trade in that locality. *N.J.S.A.* 34:11–56.30. The constitutionality of the Act and its delegation of power to the Commissioner to determine the prevailing wage were upheld in *Male v. Ernest Renda*, 122 *N.J.Super.* 526, 533 (App.Div.1973), aff'd, 64 *N.J.* 199, *cert.* denied, 419 *U.S.* 839, 95 *S.Ct.* 69, 42 *L.Ed.*2d 66 (1974).

The Act provides criminal sanctions for failure to pay the prevailing wage, failure to keep required records, or otherwise interfering with the Commissioner in enforcing the statute. *N.J.S.A.* 34:11–56.35. It also authorizes civil actions by workmen, or by the Commissioner on their behalf, to recover the difference between the prevailing wage and the wage actually paid. *N.J.S.A.* 34:11–56.40.

The debarment provisions at issue here are set forth in successive sections of the statute:

> In the event that the commissioner shall determine, after investigation, that any contractor or subcontractor has failed to pay the prevailing wage he shall thereupon list and keep on record the name of such contractor or subcontractor and forthwith give notice by mail of such list to any public body who shall request the commissioner so to do. Where the person responsible denies that a failure to pay the prevailing wage has occurred, he shall have the right to apply to the commissioner for a hearing which must be afforded and a decision rendered within 48 hours of the request for a hearing. If the commissioner rules against the petitioning party he shall have the right to apply for injunctive relief in the Superior Court against the listing by the commissioner. [*N.J.S.A.* 34:11–56.37.]

> \*     \*     \*     \*     \*     \*     \*     \*

> The public body awarding any contract for public work or otherwise undertaking any public work shall first ascertain from the commissioner the list of names of contractors or subcontractors who have failed to pay prevailing wages as determined in section 14 of this act, and no contract shall be awarded to such contractor or subcontractor, or to any firm, corporation or partnership in which such contractor or subcontractor has an interest until 3 years have elapsed

from the date of listing as determined in section 14 of this act. [*N.J.S.A.* 34:11–56.38 (footnotes omitted).]

## III

Appellants contest the debarment of Titan's officers on two grounds. First, they contend that the term "workman" in *N.J.S.A.* 34:11–56.26(7) should be interpreted to exclude stockholders of small corporations who perform non-supervisory labor on public work projects. Second, relying on *Department of Labor v. Berlanti, supra,* 196 *N.J.Super.* 122, they assert that the Commissioner lacks authority under the Act to debar corporate officers even if a corporation required to pay the prevailing wage has failed to do so.

### A.

In urging that corporate stockholders be exempted from the prevailing wage requirement, appellants argue that this requirement is illusory as to stockholders, since they can reimburse the corporation for all or part of the wages previously paid, thereby making apparent compliance with the prevailing wage standard meaningless. Noting further that the applicable collective-bargaining agreement used to establish the prevailing wage for the Middlesex project excluded supervisory employees, appellants contend that the application of the Act should be limited by the specific terms of this collective-bargaining agreement. Finally, they observe that the purpose of the Act was not to protect employers from underpaying themselves.

Similar contentions were considered and rejected in *Cugliotta Bros., Inc. v. New Jersey Dep't of Labor & Industry,* 168 *N.J.Super.* 556 (App.Div.1979), where the court observed:

Appellant suggests that since Jacob and Santo Cugliotta "are principal stockholders, directors and officers of a closely-held construction corporation," and "manifestly * * * the policy-setting decision-makers of their enterprise," they do not properly come within the Act's definition of "workman" despite their "participation in some of the manual work of their business." We disagree. To adopt appellant's suggested limitation on the meaning of the term would run contrary to (1) the quoted statutory definition; (2) the spirit of the act as

expressed in *N.J.S.A.* 34:11–56.25; see *Male v. Ernest Renda Contracting Co.,* 122 *N.J.Super.* 526 (App.Div.1973), aff'd 64 *N.J.* 199 (1974), *cert.* den. 419 *U.S.* 839, 95 *S.Ct.* 69, 42 *L.Ed.*2d 66 (1974) and (3) decisional law in other, but analogous areas, see *e.g., Mahoney v. Nitroform Co. Inc.,* 20 *N.J.* 499 (1956), in which the court pointed out that

> ˟ ˟ ˟ it is settled law in our State that when corporate officers perform work which if performed by anyone else would confer employee status for the purposes of the Workmen's [now Workers'] Compensation Act the officers have that status. [at 504].

[*Id.* at 559–60 (footnote omitted).]

We agree with the Appellate Division's conclusion in *Cugliotta* that both the letter and purpose of the Act would be disserved by the construction urged by appellants. Such a construction would invite stock ownership schemes devised to frustrate the Act's purpose and defeat the uniform application intended by the Legislature. We hold that *the prevailing wage requirement of the Act applies to all workmen whether or not they are stockholders or principals of the contractor performing the public work project.*

### B.

The contention that the Commissioner lacks authority to debar officers of corporations that have failed to pay the prevailing wage requires us first to examine the statute to ascertain whether the Legislature has expressly granted such authority to the Commissioner. *N.J.S.A.* 34:11–56.37 provides that if the Commissioner determines that "any contractor or subcontractor has failed to pay the prevailing wage, he shall thereupon list and keep on record the name of such contractor or subcontractor and forthwith give notice by mail of such list to any public body who shall request the commissioner so to do." *N.J.S.A.* 34:11–56.37.

The Commissioner contends that other language in the same section of the Act expressly authorizes him to debar corporate officers. The second sentence of *N.J.S.A.* 34:11–52.37 provides:

> Where the *person responsible* denies that a failure to pay the prevailing wage has occurred, *he* shall have the right to apply to the commissioner for a hearing which must be afforded and a decision rendered within 48 hours of the request

for a hearing. If the commissioner rules against the petitioning party he shall have the right to apply for injunctive relief in the Superior Court against the listing by the commissioner. [*N.J.S.A.* 34:11–56.37 (emphasis added).]

The Commissioner contends that the use of the words "person responsible" reflects the Legislature's intention to empower the Commissioner to debar any corporate officer responsible for a corporation's failure to pay the prevailing wage. Appellants, however, maintain that the phrase "person responsible" merely identifies the class of individuals that may invoke the contractor's or subcontractor's right to a hearing and does not enlarge the scope of the Commissioner's power to debar to include individuals. Appellants also rely on *N.J.S.A.* 34:11–56.38, which prohibits public bodies from contracting with debarred entities:

The public body awarding any contract for public work or otherwise undertaking any public work shall first ascertain from the commissioner the *list of names of contractors or subcontractors* who have failed to pay prevailing wages as determined in section 14 of this act, and *no contract shall be awarded to such contractor or subcontractor, or to any firm, corporation or partnership in which such contractor or subcontractor has an interest* until 3 years have elapsed from the date of listing as determined in section 14 of this act. [*N.J.S.A.* 34:11–56.38 (footnote omitted; emphasis added).]

Noting that *N.J.S.A.* 34:11–56.37 does not include the "person responsible" among those entities to be set forth on the list of debarred contractors, and that *N.J.S.A.* 34:11–56.38 does not include the "person responsible" among those related entities that also are barred from public contract work, appellants contend that the omission of this phrase precludes a finding that the legislature specifically authorized the Commissioner to debar corporate officers.

At most, the statutory language is ambiguous and cannot be read to confer, as the Commissioner suggests, an express grant of power to debar corporate officers individually. This, however, does not end the inquiry as to the scope of the Commissioner's authority. We have consistently recognized that agency power can be inferred from the legislative objectives that inspired a statute's enactment:

In determining whether a particular administrative act enjoys statutory authorization, the reviewing court may look beyond the specific terms of the enabling

act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives. * * * The purpose of this inquiry is to ascertain whether the requisite authority may be said to be implicitly supplied, as "[t]hat which is implied is as much a part of the law as that which is expressed." ˇ ˣ ˇ *In re Gastman*, 147 *N.J.Super.* 101, 109 (App.Div.1977). [*New Jersey Guild of Hearing Aid Dispensers v. Long*, 75 *N.J.* 544, 562 (1978).]

In performing this inquiry, our purpose is to enable the agency to achieve the legislative intent:

This Court has held that the grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities and that the courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent. *See In re Suspension of Heller*, 73 *N.J.* 292, 303 (1977); *Cammarata v. Essex County Park Comm'n, supra*, 26 *N.J.* at 411; *Lane v. Holderman, supra*, 23 *N.J.* at 315. [*New Jersey Guild of Hearing Aid Dispensers v. Long, supra*, 75 *N.J.* at 562.]

▮ Guided by this principle, we are satisfied that the Commissioner's authority to debar responsible corporate officers, or responsible principals of non-corporate entities, may be inferred from the public policy expressed in the Act. As noted above, the purpose of the Act is "to protect [employees] as well as their employers from the effects of serious and unfair competition" that result from inadequate wages. *N.J.S.A.* 34:11–56.25. Debarment is one of the means employed by the Act to deter contractors from paying less than the prevailing wage. It is evident that if the Commissioner's power to debar were limited to the contracting entity, thereby permitting the individuals responsible for the violation to form new enterprises to engage in public work projects, the deterrent effect of debarment would be seriously impaired. Accordingly, we hold that the Commissioner's power to debar those individuals in corporate and non-corporate entities who are responsible for the failure to pay the prevailing wage on public work contracts is an incidental power necessary to achieve the legislative objectives that the Act is designed to implement. *See A.A. Mastrangelo, Inc. v. Department of Environmental Protection*, 90 *N.J.* 666, 683–84 (1982); *N.J. Guild of Hearing Aid Dispensers v. Long, supra*, 75 *N.J.* at 562; *In re Suspension of Heller, supra*, 73

N.J. at 302–304;  *Cammarata v. Essex County Park Comm'n*, 26 N.J. 404, 411 (1958).

IV

We next consider whether the Department has exercised its authority to debar corporate officers in a manner consistent with the statute and the principles of law that govern the exercise of power by administrative agencies.[4]

We note that although the Act specifically authorizes the Commissioner to adopt rules and regulations necessary to administer and enforce the Act, *N.J.S.A.* 34:11–56.43, the Commissioner has adopted no rules or regulations governing the debarment procedure, either with respect to contractors, subcontractors, or their principals.[5]

The record before us reveals that the Department of Labor did not afford Titan's principals a hearing to determine the extent of their individual knowledge of and responsibility for Titan's failure to pay the prevailing wage on the Middlesex job. Their debarment was based solely on the Commissioner's determination that the corporation had failed to pay the prevailing wage.

At this Court's request, the Department supplemented the record with statistics demonstrating its administrative practice in implementing the debarment provisions of the Act. Appar-

---

[1]Although not argued below, the petition for certification specifically challenged the Commissioner's authority, under the Act, to debar corporate officers, citing *Dep't of Labor v. Berlanti, supra,* 196 *N.J.Super.* 122. Clearly, the challenge to the Commissioner's statutory authority to debar requires our consideration of the propriety of the procedure used by the Commissioner to exercise that authority. *R.* 2:12–11; *In re Appeal of Howard D. Johnson Co.,* 36 *N.J.* 443, 446 (1962).

[5]The Department has adopted regulations concerning debarment from *state* construction projects, and failure to pay the prevailing wage on a public work project is one of the grounds for such debarment. *N.J.A.C.* 12:3–1.3 and 1.4. These regulations, however, have no application to this case.

ently, the Department began to use debarment as a means of enforcement in 1974. Since then it has consistently required that corporate principals be debarred whenever a corporation is debarred for noncompliance with the Act. Accordingly, since 1974, the Department has implemented through adjudication on a case-by-case basis its uniform policy to debar all principals of corporations that have violated the Act.

As a general rule, an administrative agency has discretion to exercise its statutory authority either by adjudication or rule-making. *Securities and Exchange Comm'n v. Chenery Corp.*, 332 *U.S.* 194, 202–03, 67 *S.Ct.* 1575, 1580, 91 *L.Ed.* 1995, 2002 (1947); *NLRB v. Wyman-Gordon Co.*, 394 *U.S.* 759, 771, 89 *S.Ct.* 1426, 1432, 22 *L.Ed.*2d 709, 718 (1969) (Black, J., concurring); *Crema v. New Jersey Dep't of Envtl. Protection*, 94 *N.J.* 286, 299 (1983); *Texter v. Human Services Dep't*, 88 *N.J.* 376, 383–86 (1982); *Bally Mfg. Corp. v. New Jersey Casino Control Comm'n*, 85 *N.J.* 325, 338 (1982) (Handler, J., concurring). Courts and commentators have encountered some difficulty in determining which form of administrative action is more appropriate in a specific situation. *See generally* 2 K.C. Davis, *Administrative Law Treatise* §§ 7:2, :3 (2d ed.1979). In broad terms, however, the essential difference between rulemaking and adjudication can be stated simply:

"[R]ulemaking"—the process leading to the issuance of regulations—is typically a proceeding that is entirely open ended in form, specifying only the class of persons or practices that will come within its scope, while "adjudication" is a proceeding directed at least in part at determining the legal status of persons who are named as parties, or of the acts or practices of those persons.

\*        \*        \*        \*        \*        \*        \*        \*

[T]he process of adjudication, including the decision whether or not to prosecute, is often used without any effort to clarify and elaborate general statutory standards, while the rulemaking process has no real function except elaboration. [Shapiro, "The Choice of Rulemaking or Adjudication in the Development of Administrative Policy," 78 *Harv.L.Rev.* 921, 924, 927 (1965).]

This Court has accorded full recognition to the critical role of rulemaking in the administrative process:

"[T]he function of promulgating administrative rules and regulations lies at the very heart of the administrative process." *Cammarata v. Essex Cty. Park*

*Comm'n*, 26 *N.J.* 404, 410 (1958). *See also Abelson's Inc. v. N.J. State Board of Optometrists*, 5 *N.J.* 412, 423 (1950). Rulemaking allows the agency to further the policy goals of legislation by developing coherent and rational codes of conduct "so those concerned may know in advance all the rules of the game, so to speak, and may act with reasonable assurance," *Boller Beverages Inc. v. Davis*, 38 *N.J.* 138, 152 (1962). We have recognized that administrative agencies are the arms of the executive branch of government through which it executes the laws passed by the Legislature. Agencies regulate through their delegated power to promulgate rules and regulations. [*General Assembly of New Jersey v. Byrne*, 90 *N.J.* 376, 385–86 (1982).]

In *Boller Beverages v. Davis*, 38 *N.J.* 138 (1962), we emphasized that fairness requires that an administrative agency use its rulemaking power to establish the standards it intends to enforce by adjudication:

Where an administrative agent is given full rule-making power, he must in all fairness bottom an alleged violation on general legislation before he may rule in a particular case. The general mandate, either statutory or administrative, must precede the specific violation. [*Id.* at 155.]

In *Crema v. New Jersey Dep't of Envtl. Protection, supra,* 94 *N.J.* 286, we invalidated the Department of Environmental Protection's "conceptual" approval of a large commercial and residential development in an environmentally sensitive area because the Department had not authorized such approval through rulemaking. Although we concluded that the agency possessed the implied power to grant "conceptual" approval to such an application, we determined that the establishment of substantive criteria for this approval through a rulemaking proceeding that afforded the opportunity for public participation was a prerequisite to the proper exercise of the agency's implied power. Justice Handler, writing for a unanimous Court, expressed our holding in these terms:

We therefore conclude that DEP's "reliance on adjudication ... amount[ed] to an abuse of discretion or a violation" of the Coastal Area Facility Review Act. [*N.L.R.B. v.*] *Bell Aerospace, supra,* 416 *U.S.* [267] at 294, 94 *S.Ct.* [1757] at 1771, 40 *L.Ed.*2d [134] at 154. We recognize that the authority to engage in the conceptual review and approval of proposed developments subject to CAF-RA is a power that can reasonably be implied in light of the operative Act. We specifically hold that the conceptual review and approval of proposed developments, to the extent the exercise of this authority purports to establish enforceable rights beyond those now provided by the informal review regulations, require advance promulgation of regulatory standards, both substantive

and procedural. These standards should be determined by agency rulemaking in order that the criteria that underlie their formulation and application can be properly developed and expounded with the maximum involvement of the general public. The absence of such regulations is fatal to the agency actions undertaken in these proceedings. Accordingly, on these grounds the conceptual approval must be considered invalid. [*Id.* at 303.]

A number of federal court decisions reflect the principle that agency action through adjudication rather than rulemaking is improper in certain circumstances. *See NLRB v. Wyman-Gordon Co., supra,* 394 *U.S.* at 764, 89 *S.Ct.* at 1428, 22 *L.Ed.*2d at 714 ("[The rule-making provisions] may not be avoided by the process of making rules in the course of adjudicatory proceedings."); *Ford Motor Co. v. Federal Trade Comm'n,* 673 *F.*2d 1008, 1010 (9th Cir.1981), *cert.* denied, 459 *U.S.* 999, 103 *S.Ct.* 358, 74 *L.Ed.*2d 394 (1982) ("[T]he precise issue * * * is whether this adjudication changes existing law, and has widespread application. It does, and the matter should be addressed by rulemaking."); *Patel v. Immigration and Naturalization Serv.,* 638 *F.*2d 1199 (9th Cir.1980) (Immigration Service could not use adjudicatory proceeding to impose added conditions on so-called "investors exemption" for aliens where the exemption had been established by rulemaking); *White v. Roughton,* 530 *F.*2d 750, 754 (7th Cir.1976) (failure to establish by regulation standards for grant of welfare benefits constitutes denial of due process); *Environmental Defense Fund, Inc. v. Ruckelshaus,* 439 *F.*2d 584, 598 (D.C.Cir.1971) ("When administrators provide a framework for principled decision-making, the result will be to diminish the importance of judicial review by enhancing the integrity of the administrative process * * *."); *Gonzales v. Freeman,* 334 *F.*2d 570, 578 (D.C.Cir.1964) ("Considerations of basic fairness require administrative regulations establishing standards for debarment and procedures which will include notice of specific charges, opportunity to present evidence and to cross-examine adverse witnesses, all culminating in administrative findings and conclusions based upon the record so made."); *Historic Green Springs, Inc. v. Bergland,* 497 *F.Supp.* 839, 856 (E.D.Va.1980) (designation of 14,000 acre

tract as National Historic Landmark invalidated because of agency's failure to promulgate by regulation substantive standards and procedural rules to govern the designation process); *Baker-Chaput v. Cammett*, 406 *F.Supp.* 1134, 1140 (D.N.H. 1976) ("The [welfare] applicant must * * * know beforehand what substantive criteria she had to meet in order to obtain general assistance. * * * I rule that the establishment of written, objective, and ascertainable standards is an elementary and intrinsic part of due process."). *But cf. NLRB v. Bell Aerospace Co.*, 416 *U.S.* 267, 294, 94 *S.Ct.* 1757, 1771, 40 *L.Ed.* 2d 134, 154 (1974) (although there is a choice between adjudication and rulemaking, adjudication is especially appropriate where it is doubtful whether any generalized standard could be framed which would have more than marginal utility); *Securities and Exchange Comm'n v. Chenery Corp., supra*, 332 *U.S.* at 202–03, 67 *S.Ct.* at 1580, 91 *L.Ed.* at 2002 ("In [some] situations, the agency must retain power to deal with * * * problems on a case-by-case basis if the administrative process is to be effective.") *See generally* 2 K.C. Davis, *supra*, at § 7:26.

Agency rulemaking as a safeguard against arbitrary administrative action has been endorsed by one commentator as a refinement of the historical requirement that the specific standards that circumscribe an agency's power should be set forth in the enabling legislation.

> To the extent that the objective is to require standards to guide discretionary determinations in cases affecting particular parties, that objective can be better attained through judicial insistence that administrators create the standards through rule-making than by judicial insistence upon statutory standards. Legislative bodies should clarify their purposes to the extent that they are able and willing to do so, but when they choose to delegate without standards, the courts should uphold the delegation whenever the needed standards to guide particular determinations have been supplied through administrative rules or policy statements.
>
> *       *       *       *       *       *       *       *
>
> When standards are lacking to guide the exercise of discretionary power in individual cases, courts should in appropriate circumstances require administrative rulemaking to provide the standards, the guides, the rules, the limits, and the procedures. The movement during the 1970s toward judicially required

administrative rulemaking has been a strong one. [1 K.C. Davis, *Administrative Law Treatise*, § 3:15, at 211–14 (2d ed.1978).]

■ Considerations of basic fairness require that the Commissioner, in administering the Prevailing Wage Act, initially act by regulation if he intends as a general rule to debar the responsible officers of corporate contractors or subcontractors who fail to pay the prevailing wage on public work contracts. The Act itself prescribes no standards establishing the grounds for debarring corporate officers. It is also silent as to the right of such officers to a hearing prior to debarment. The record before us discloses that the Commissioner, in administering the Act, requires no grounds other than debarment of the corporate contractor or subcontractor to support the debarment of corporate officers. For that reason, no separate hearing was afforded to the officers in this case to ascertain their individual culpability. Conceivably, one or more of the debarred officers may have been entirely without knowledge of or culpability for the corporate violation. Fundamental principles of due process mandate that standards must be established to define the conduct that will result in individual debarment. Procedural safeguards, including notice, hearing, the right to present evidence, and the right to cross examine an adverse witness must be afforded to those individuals facing debarment. *Gonzales v. Freeman, supra,* 334 *F.*2d at 578.

■ We conclude that the Legislature's authorization to the Commissioner, *N.J.S.A.* 34:11–56.43, to adopt the rules and regulations necessary for the administration and enforcement of the Act imposed on the Department the duty to act initially by rulemaking in order to expand the scope of the Act's debarment provisions to apply to corporate officers. The rulemaking process would expose to public comment the Department's policy to debar principals of contractors that have violated the Act. Such rulemaking would also provide the substantive standards and procedural safeguards that are essential to the Commissioner's exercise of his statutory debarment power. We anticipate that the substantive standards to be adopted by

the Commissioner will distinguish fairly between those corporate officers and principals who are informed of or responsible for a contractor's compliance with the Act and those who are not.

Our conclusion in this case that rulemaking is a prerequisite to the agency's debarment of corporate officers and principals is an exception to the general rule that courts normally should defer to an agency's discretion in determining the appropriate method of implementing its statutory responsibilities. *Texter v. Human Services Dep't, supra,* 88 *N.J.* at 385–86. We depart from that general rule in this case because the Department's implementation of its debarment policy by adjudication has resulted in such a lack of essential substantive standards and procedural safeguards that, under these circumstances, we hold that the Department's failure to act by rulemaking was an abuse of discretion and was inconsistent with the statutory intent. *Crema v. New Jersey Dep't of Envtl. Protection, supra,* 94 *N.J.* at 303; *Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 328–34 (1984); *see Texter v. Human Services Dep't, supra,* 88 *N.J.* at 382–86. Accordingly, the debarment of Titan's officers is invalid and must be set aside.

V

Titan advances two additional arguments to establish that its corporate debarment was invalid as well. First, it contends that the ALJ erroneously assumed that Titan's debarment was mandatory after its failure to pay the prevailing wage had been established at a hearing. Titan asserts that the ALJ's interpretation of the statute is incorrect, citing *Department of Labor & Indus. v. Union Paving & Constr. Co.,* 168 *N.J.Super.* 19, 31–32 (App.Div.1979), for the proposition that debarment is a remedy left to the discretion of the Commissioner.

■■ Although the debarment provision of the Act indicates that debarment is mandatory in the event of *any* violation of

the Act, a fair reading of the Act suggests that the Commissioner has the discretion to pursue alternative remedies for the failure to pay the prevailing wage. The remedies include supervision of payments due to workmen on public contracts, *N.J.S.A.* 34:11–56.36, civil actions to recover the amount of prevailing wages not paid to workmen, *N.J.S.A.* 34:11–56.40, criminal prosecution, *N.J.S.A.* 34:11–56.35, or debarment, *N.J. S.A.* 34:11–56.37 and –56.38. Discretion as to which of these remedies should be pursued has been conferred on the Commissioner. *See Department of Labor & Indus. v. Union Paving & Constr. Co., supra,* 168 *N.J.Super.* at 31–32. However, if the Commissioner elects to institute debarment proceedings, the Act mandates debarment, *N.J.S.A.* 34:11–56.37, whether the violation is established by investigation or at an administrative hearing, subject to the Commissioner's overriding authority to modify or reject the hearing examiner's initial decision. *N.J. S.A.* 52:14B–10(c). Thus, if the record before the hearing examiner establishes only a minimal or technical violation of the Act, the Commissioner possesses the supervisory authority to impose a less severe sanction than debarment. In this case the Commissioner did not elect to modify the hearing examiner's decision.

In the absence of any ambiguity, our duty is to apply the statute as written. *State v. Fearick,* 69 *N.J.* 32, 37 (1975). Accordingly, we find no error in the manner in which the Commissioner and the ALJ applied the debarment provisions of the Act to Titan.

■ Finally, Titan contends it was error to deny its motion to reopen the hearing, filed subsequent to the ALJ's decision, to allow it to introduce additional evidence on the issue of whether its officers were paid the prevailing wage. This motion was directed to the Commissioner. *N.J.A.C.* 1:1–16.4(e). The Commissioner denied Titan's motion by allowing the ALJ's decision to become final after 45 days. *N.J.A.C.* 1:1–16.5(d). It is undisputed that during the administrative hearing Titan con-

ceded that it had failed to pay its officers the prevailing wage. Under the circumstances, we find that the Commissioner did not abuse his discretion in refusing to grant the motion to reopen the hearing.

For the foregoing reasons, the judgment of the Appellate Division is affirmed in part and reversed in part.

*For affirmance in part, reversal in part*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.