**In re HSR ASSOCIATES, Debtor.**

**Bankruptcy No. 93–30859.**

United States Bankruptcy Court,
D. New Jersey.

Jan. 19, 1994.

William L. Boyd, Boyd and Boyd, Trenton, NJ, for Helmut Builders, Inc. and Helmut Fuerstner.

Frank P. Armenante, Malsbury & Armenante, P.A., Allentown, NJ, for Stanbec, Inc.

Jonathan M. Preziosi, Jamieson, Moore, Peskin & Spicer, Princeton, NJ, for Moslowski Bros.

## *MEMORANDUM OPINION*

STEPHEN A. STRIPP, Bankruptcy Judge.

This constitutes the court's decision on a motion by Stanbec, Inc., a partner in the debtor partnership, to reopen the debtor's chapter 11 case, for damages under 11 U.S.C. § 303(i), and for sanctions under Federal Rule of Bankruptcy Procedure 9011. This court has jurisdiction under 28 U.S.C. §§ 1334(b), 151, and 157(b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). For the reasons set forth in this opinion, Stanbec, Inc.'s motion to reopen the bankruptcy case and for damages and sanctions is denied.

## *FINDINGS OF FACT*

HSR Associates, the debtor, is a general partnership formed in January 1990 for the purpose of purchasing property in Bordentown, NJ and building a condominium complex on the property. The general partners of HSR Associates are Helmut Builders, Inc. ("Helmut") and Stanbec, Inc. ("Stanbec") each owning fifty percent of the partnership. Helmut Fuerstner ("Fuerstner") is the principal of Helmut.

After purchasing the Bordentown property, the relationship between the partners deteriorated. Stanbec declared itself managing partner, which Helmut disputed. In July 1992, Stanbec filed for dissolution of the part-

**682**

nership in the Superior Court of New Jersey, Chancery Division, Monmouth County. Helmut consented to dissolution and both partners requested liquidation of the partnership assets. In August 1992, the superior court held a hearing on the order to show cause for dissolution. On September 8, 1992, the partners executed a consent order to retain a broker to sell the property. On October 7, 1992, the superior court held a case management conference at which Helmut objected to the sale by the broker and instead suggested a public auction. Stanbec agreed to an auction and the partners negotiated and agreed to the terms of the auction. However, Stanbec and Helmut could not agree on the minimum bid requirement for the auction. Stanbec Inc. wanted a $400,000 minimum bid and Helmut wanted a $900,000 minimum bid. On December 18, 1992, the superior court entered an order setting the terms and conditions of the auction including a $500,000 minimum bid requirement. The partners agreed that the auction would take place on February 11, 1993 at 2:00 p.m.

On February 11, 1993, at 8:30 a.m., Helmut filed an involuntary petition against HSR Associates under chapter 11 of title 11, United States Code ("Bankruptcy Code" or "Code"). On March 3, 1993, Stanbec moved in this court to dismiss the involuntary petition under Code § 1112(b) for cause, including bad faith in the filing of the petition. Stanbec also requested the court to require the petitioner to file an indemnity bond under Code § 303(e) for any amounts the court would later allow as damages under Code § 303(i) if the case was dismissed.

At a hearing on the motion to dismiss on March 29, 1993, the court found that the petition was filed in bad faith for an improper purpose based on uncontested allegations that Fuerstner repeatedly stated that "he would rather see every brick on this project fall, than to let Stanbec have it," that "he would tie Stanbec up in court for at least four years, that he had no interest payments to make, his only expense was real estate taxes, so what did he care if it took years to litigate this matter," and that "he would 'bury Stanbec.'" Tr. at 15.

Alternatively, the court found, based on the procedural history in state court, that a sale of property by the bankruptcy court would serve no purpose and would be no more beneficial to the estate then the terms established by the superior court. Based on these findings, this court dismissed the involuntary petition by order entered March 29, 1993. The court also dismissed Stanbec's motion for damages under Code § 303(i) without prejudice.

On July 7, 1993, Stanbec filed the subject motion to reopen the case and for damages under Code § 303(i) against Helmut and Fuerstner. On October 5, 1993, Stanbec made an additional motion to reopen the case and for sanctions under Federal Bankruptcy Rule of Procedure ("Bankruptcy Rule") 9011.

On August 9, 1993, Helmut filed a voluntary petition under chapter 7 of the Bankruptcy Code. The motion against Helmut is therefore stayed and this motion addresses only Fuerstner's personal liability for damages under Code § 303(i) and for sanctions under Bankruptcy Rule 9011.

### CONCLUSIONS OF LAW
#### A. Bankruptcy Rule 9011 Sanctions

█ The first issue is whether Stanbec can recover sanctions under Bankruptcy Rule 9011. The Third Circuit requires the filing of a motion for sanctions under Federal Rule of Civil Procedure ("Rule") 11 before the entry of a final judgment. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 100 (3d Cir.1988). A dismissal of an action is a final judgment, and a motion for Rule 11 sanctions must therefore be filed prior to dismissal of an action. *See Landon v. Hunt*, 938 F.2d 450, 453 (3d Cir.1991).

█ Stanbec's motion to dismiss the involuntary petition only requested damages pursuant to Code § 303(i) and not sanctions under Bankruptcy Rule 9011. Stanbec maintains that "[i]t was at all times Stanbec's intention to rely on the provisions of both Section 303(i) and Bankruptcy Rule 9011." Letter B. at 2 (September 27, 1993). Although it might have been Stanbec's intention to rely on Bankruptcy Rule 9011, Stanbec did not specifically request sanctions un-

der Bankruptcy Rule 9011 in its motion to dismiss, in its first motion to reopen the bankruptcy case, or any time prior to its second motion to reopen the bankruptcy case. Because the case had already been dismissed on Stanbec's own motion prior to Stanbec's request for Bankruptcy Rule 9011 sanctions, Stanbec's motion for sanctions under Bankruptcy Rule 9011 is untimely under *Mary Ann Pensiero, Inc. v. Lingle, supra,* and is therefore denied.

## B. Bankruptcy Code Section 303(i) Damages

The next issue is whether the principal of a petitioning corporation can be held personally liable for damages under Code § 303(i). Code § 303(i) provides that

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
> > (1) against the *petitioners* and in favor of the debtor for—
> >
> > > (A) costs; or
> > >
> > > (B) a reasonable attorney's fee; or
> >
> > (2) against any *petitioner* that filed the petition in bad faith, for—
> >
> > > (A) any damages proximately cause by such filing;
> > >
> > > or
> > >
> > > (B) punitive damages.

11 U.S.C. § 303(i) (emphasis added).

Stanbec states that it found no legal authority on the issue of whether Code § 303(i) damages could be awarded against a principal of a petitioning corporation except cases which also involved Bankruptcy Rule 9011 sanctions. Stanbec argues that the corporate veil should be pierced to hold Fuerstner personally liable under Code § 303(i) because Fuerstner was the alter ego of the petitioning corporation. However, Stanbec did not give any factual or legal argument in support

of piercing the corporate veil. Fuerstner argues that damages under Code § 303(i) can only be awarded against the petitioner, in this case, Helmut. Moreover, Fuerstner argues that Stanbec has not shown cause to pierce the corporate veil.[1] The court agrees with Fuerstner on this point.

■ Under New Jersey law, the corporate veil will be pierced only in cases of fraud or injustice. *Lyon v. Barrett,* 89 N.J. 294, 300, 445 A.2d 1153 (1982). The fraud justifying piercing the corporate veil can be legal or equitable fraud. *Walensky v. Jonathan Royce International, Inc.,* 264 N.J.Super. 276, 283, 624 A.2d 613, 617 (App.Div.1993). "The purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, ... to perpetrate fraud, to accomplish a crime, or otherwise to evade the law...." *Department of Envtl. Protection v. Ventron Corp.,* 94 N.J. 473, 500, 468 A.2d 150 (1983) (citations omitted). New Jersey courts have been reluctant to pierce the corporate veil in the absence of evidence of "that the corporation was formed or used for some illegal or fraudulent purpose." *Department of Labor v. Berlanti,* 196 N.J.Super. 122, 128, 481 A.2d 830 (App.Div.1984), *certif. granted,* 99 N.J. 151, 491 A.2d 666 (1984), *appeal dismissed,* 101 N.J. 568, 503 A.2d 846 (1985); *compare Department of Envtl. Protection v. Arky's Auto Sales,* 224 N.J.Super. 200, 207, 539 A.2d 1280 (App.Div.1988) (insufficient evidence to support finding that corporation was mere shell where principals were acting for corporation and not themselves individually) *with Stochastic Decisions, Inc. v. DiDomenico,* 236 N.J.Super. 388, 395, 565 A.2d 1133 (App.Div.1989) (corporate veil pierced where sister corporations commingled funds, operated in each other's names, and made impermissible payments to owners), *certif. denied,* 121 N.J. 607, 583 A.2d 309 (1990). The party seeking to have the court pierce the corporate veil has the burden of proof. *Touch of Class Leasing v. Mercedes–Benz*

---

1. Fuerstner also maintains that because there was no indication at or before the March 29, 1993 hearing that Stanbec intended to hold him personally liable under Code § 303(i), he has the right to deny the previously uncontested statements allegedly made by him regarding filing the petition. Because Stanbec has not made a prima facie showing of cause to pierce the corporate veil, the court need not reach this issue.

684

*Credit, Inc.*, 248 N.J.Super. 426, 441, 591 A.2d 661, 669 (App.Div.1991).

 Stanbec has not alleged any specific facts demonstrating legal or equitable fraud. The court previously found that the petition was filed in bad faith and for an improper purpose based on the uncontested statements by Fuerstner that he did not want Stanbec to obtain the property and would tie Stanbec up in litigation. Although the court found these statements to constitute bad faith and an improper purpose by Helmut in filing the bankruptcy petition, the statements do not constitute fraud.

 Nor has Stanbec shown cause to pierce the corporate veil on the grounds of injustice. It is true that Helmut, acting through Fuerstner, acted unjustly by filing the involuntary petition against HSR Associates in bad faith and for an improper purpose. If Helmut did not now have the protection of the automatic stay by virtue of its own bankruptcy petition, the court would have granted Stanbec judgment against Helmut under Code § 303(i). The corporate veil is not to be pierced lightly, however, and Stanbec has simply not shown any facts from which the court could provide such relief. The mere fact that Fuerstner was the principal of a corporation which acted improperly is not in itself sufficient to hold him personally liable for the corporation's actions. The court therefore finds that Stanbec failed to meet its burden of demonstrating that piercing the corporate veil is warranted.

### CONCLUSION

Stanbec's motion to reopen the HSR Associates bankruptcy case to assess sanctions pursuant to Bankruptcy Rule 9011 is untimely and, therefore, denied. Stanbec's motion to reopen the HSR bankruptcy case to assess damages against Fuerstner is also denied because Stanbec has not proven any facts supporting the disregard of the corporate form in this case, nor has Stanbec presented any other cognizable legal theory under which the principal of a petitioning corporation can be held individually liable for damages under Code § 303(i).

The Clerk shall prepare and enter Standard Order 18.