731 A.2d 1212 (1999)
323 N.J. Super. 30
Carlton C. BROWN, Sr., Plaintiff-Respondent,
v.
Eleanore BROWN, Defendant/Third Party Plaintiff-Appellant,
v.
Carlton C. Brown, Sr., Brown Roofing Company, Inc., Brown & Guarino, Inc., Terri L. Brown and Carlton C. Brown, Jr., Third Party Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted December 2, 1998.
Decided July 7, 1999.
*1213 Capizola, Fineman & Lapham, Vineland, attorneys for appellant (Darrell Fineman, of counsel, Jeannine V. Cavagnoro and Mr. Fineman, on the brief).
Gruccio, Pepper, Giovinazzi, DeSanto & Farnoly, Vineland, attorneys for respondents Terri L. Brown and Brown & Guarino (E. Edward Bowman and Gregory S. Martinelli, on the brief).
Respondent Carlton C. Brown has not filed a brief.
Respondent Brown Roofing Company, Inc. has not filed a brief.
Before Judges LANDAU, BRAITHWAITE and WECKER.
The opinion of the court was delivered by WECKER, J.A.D.
The issue presented is whether a former fifty-percent shareholder in a closely-held corporation, who has transferred all of her shares to the other fifty-percent shareholder as part of a divorce settlement, can continue what appears to be a shareholders' derivative action against a third-party, when the action arises out of events that occurred during the shareholder's ownership.
The Law Division Judge in this case granted the third party's motion for judgment on the ground that the former shareholder no longer had standing to maintain the action, because she no longer owned her shares. We disagree, and therefore reverse.
The background is as follows. Brown Roofing Company, Inc., was owned in equal parts by Carlton C. Brown, Sr. and Eleanore Brown, a husband and wife. At a time when Mr. Brown sought to retire out of state and Mrs. Brown, who had worked only sporadically in the business, was ill, their adult daughter, Terri Brown, became the chief operating officer of the company.[1]
During the pendency of the divorce action brought by Mr. Brown against Mrs. Brown, Mrs. Brown filed a third party complaint in the nature of a shareholder's derivative action against Terri Brown and her new business, Brown and Guarino. The gist of the third party complaint was that Terri Brown diverted corporate opportunities (such as the acquisition of real property), as well as customers, from Brown Roofing to her own business, Brown and Guarino, thereby depriving Brown Roofing of assets and profits that were rightfully its own.[2] The complaint *1214 also alleges that Terri Brown was part owner of real property for which she charged the corporation excessive rent.
During the course of a trial that was scheduled to include all of the pending claims, Mr. and Mrs. Brown settled their divorce action.[3] That settlement included the transfer of Mrs. Brown's shares in Brown Roofing to Mr. Brown; alimony payable to Mrs. Brown; and distribution of other marital property. Mrs. Brown's shares, plus her interest in certain real property which she transferred as part of the settlement, together had a stipulated value of $470,000. The settlement that was placed on the record and incorporated in the judgment of divorce recognized Mrs. Brown's "right" to continue her third party complaint. Mr. Brown, on behalf of Brown Roofing, assigned the corporation's claims against the third party defendants to Mrs. Brown.[4]
Some two years after the divorce settlement, on the continued trial date of plaintiff's case against Terri Brown and Brown and Guarino, those defendants brought a motion for judgment on the ground that plaintiff's right to pursue the corporation's derivative suit terminated with her transfer of shares to Mr. Brown. The motion judge heard extensive oral argument and gave each side the opportunity to submit written argument before granting the motion for reasons set forth in a letter opinion.
The essence of the judge's decision was, first, that Eleanore's claims constituted a shareholder derivative action and not a private or direct action of her own. See Strasenburgh v. Straubmuller, 146 N.J. 527, 548-53, 683 A.2d 818 (1996) (a claim for breach of fiduciary duty on the part of a director is generally viewed as derivative unless plaintiff suffered an injury distinct from that suffered by other shareholders or the corporation as a whole); Pepe v. GMAC, 254 N.J.Super. 662, 604 A.2d 194 (App.Div.), certif. denied, 130 N.J. 11, 611 A.2d 650 (1992). The judge then concluded that plaintiff did not meet the requirements of the statute and court rule governing a derivative action, because she had transferred her shares in the corporation.
N.J.S.A. 14A:3-6(1) provides in pertinent part:
(1) No action shall be brought in this State by a shareholder in the right of a domestic or foreign corporation unless the plaintiff was a holder of shares or of voting trust certificates therefor at the time of the transaction of which he complains, or his shares or voting trust certificates thereafter devolved upon him by operation of law from a person who was a holder at such time. (Emphasis added.)
Mirroring the statute, R. 4:32-5 provides, also in pertinent part:
In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the complaint shall be verified and allege that the plaintiff was a shareholder at the *1215 time of the transaction complained of, or that the share thereafter devolved by operation of law. (Emphasis added.)
The statute and rule both require the plaintiff to have been a shareholder at the time of the action complained of; however, neither requires continued ownership throughout the litigation. Our research has revealed no New Jersey case addressing that issue.
Whether continuing ownership is required in New Jersey for individuals claiming damage to a publicly-held corporation is not before us. We recognize that a number of states, including Delaware, have engrafted such a requirement upon the common law. While New Jersey frequently follows Delaware law in corporate matters, see, e.g., Pogostin v. Leighton, 216 N.J.Super. 363, 373, 523 A.2d 1078 (App.Div.), certif. denied, 108 N.J. 583, 531 A.2d 1356, cert. denied, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed. 2d 394 (1987), we see no compelling policy reason to do so in the unique circumstances presented, absent clear direction from the Legislature or the Supreme Court.
On appeal, Eleanore Brown contends (1) because Brown Roofing was a closely held corporation, the standing rules applicable to public corporations should not apply; (2) Brown Roofing should be deemed a partnership rather than a corporation for purposes of this issue, thereby avoiding the consequence of the share transfer; (3) equity demands that she be allowed to pursue her claims against Terri Brown and Brown and Guarino; and (4) on remand for a trial of her claims, the burden of proof should be upon the third party defendants to prove that the challenged transactions were fair and reasonable and did not divert profits from the corporation.
We see no basis for Mrs. Brown's contention that shareholders in a business entity that has sought to avail itself of the advantages of the corporate form should be entitled to treat that entity as a partnership whenever it suits them. But we need not reach that issue in light of our determination that on these facts, continuing ownership is not required for Eleanore Brown to maintain her action.
As the motion judge recognized, when Mr. and Mrs. Brown settled their divorce action and provided for Mr. Brown's acquisition of Mrs. Brown's interest in the corporation, they presumably took into account the value of the business and the effects of Terri Brown's and Brown and Guarino's actions. Mr. Brown expressly stated that while he did not wish to pursue a corporate claim against Terri, he recognized, on behalf of the corporation, Mrs. Brown's right to do so. Mrs. Brown was willing to surrender her shares in the corporation, and to give up any participation in the business, in exchange for certain consideration, including the opportunity to pursue her suit against the third party defendants. If she is permitted to do so, we see no prejudice to the third party defendants, who gave no consideration for plaintiff's settlement or for the transfer of her shares. Their liability in this suit, if any, will turn upon the same proofs that would have been admissible had Mrs. Brown not transferred her interest to Mr. Brown.
We are convinced that the concerns that support the continuing ownership requirement in other circumstances do not apply here. The American Law Institute's Principals of Corporate Governance: Analysis and Recommendations (1992), includes a section distinguishing direct from derivative actions. Section 7.01(a) explains that an action in which "injury or breach of duty to the corporation" is a prerequisite to recovery "should be treated as a derivative action." Contrariwise, an injury sustained by, or violation of a duty to, a particular shareholder "may be maintained... in an individual capacity" and "should be treated as a direct action ...." § 7.01(b). Under these generally accepted definitions, the third party complaint appears to state derivative claims, as the trial judge found. Section 7.01 also provides *1216 for cases where a plaintiff has both a direct and a derivative claim.
If a transaction gives rise to both direct and derivative claims, a holder may commence and maintain direct and derivative actions simultaneously, and any special restrictions or defenses pertaining to the maintenance, settlement, or dismissal of either action should not apply to the other.

[Id. § 7.01(c).]
The provision that is directly applicable to the case before us, is § 7.01(d):

In the case of a closely held corporation... the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons. (Emphasis added.)
Comment (e) to § 7.01 recognizes that as to closely-held corporations, "the normal policy reasons for requiring a plaintiff to employ the form of the derivative action may not be present or will be less weighty, even though the action alleges in substance a corporate injury." The comment recognizes that "the concept of a corporate injury that is distinct from any injury to the shareholders approaches the fictional in the case of a firm with only a handful of shareholders." Id. Comment (e) also cites Watson v. Button, 235 F.2d 235 (9th Cir.1956), for the proposition that "the usual policy reasons requiring an action that principally alleges an injury to the corporation to be treated as a derivative action are not always applicable to the closely held corporation."
We do not subscribe to the plaintiff's contention that we should follow the Massachusetts Supreme Judicial Court's reasoning in Donahue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578, 328 N.E.2d 505 (1975), and invariably treat what would otherwise be derivative actions as direct actions whenever a closely held corporation is involved. We are, however, persuaded that the flexible approach of § 7.01(d), with due consideration to the factors set forth therein, is the appropriate standard. As comment (e) explains,
Although § 7.01(d) does not follow the fullest potential reach of Donahue to the extent of converting all intracorporate disputes that would be normally characterized as derivative actions into direct actions whenever the case involves a closely held corporation, it gives the court discretion to treat the action as direct if the policy considerations enumerated in Comment d are satisfied. In general, when a direct action is brought on behalf of the entire class of injured shareholders and the corporation's solvency is not in question, there is less reason to insist that the action be brought derivatively. The court should then have equitable power to treat the action as direct if the corporation is closely held, thereby avoiding procedural hurdles that were not designed to apply in such a case.
Several jurisdictions have adopted the § 7.01(d) approach. See, e.g., Barth v. Barth, 659 N.E.2d 559, 562 (Ind.1995) (one of three shareholders alleging misuse of corporate assets may bring a direct action, because shareholders in a closely-held corporation have direct obligations to one another, and because such shareholder litigation often does not implicate the principles underlying derivative action rules); Richards v. Bryan, 19 Kan.App.2d 950, 879 P.2d 638, 648 (1994); Derouen v. Murray, 604 So.2d 1086, 1091 n. 2 (Miss.1992); Johnson v. Gilbert, 127 Ariz. 410, 621 P.2d 916, 918 (App.1980) (where the corporation was operated as a partnership, two shareholders could sue the other two, both derivatively and directly, for specific performance of oral agreement, breach of fiduciary duty, and diversion *1217 of corporate assets). But see, e.g., Bagdon v. Bridgestone/Firestone, Inc., 916 F.2d 379 384 (7th Cir.1990) (questioning wisdom of treating close corporations as partnerships for purposes of allowing normally derivative action to be brought directly), cert. denied, 500 U.S. 952, 111 S.Ct. 2257, 114 L.Ed.2d 710 (1991); Wessin v. Archives Corp., 592 N.W.2d 460, 466 (Minn.1999); Landstrom v. Shaver, 561 N.W.2d 1, 14 (S.D.1997).
As one court has stated in the minority shareholder freeze-out context:
Because of the difficulty in determining if a suit must be brought as a direct or a derivative action, an increasing number of courts are abandoning the distinction between a derivative and a direct action because the only interested parties are the two sets of shareholders. Furthermore, some courts have recognized that it is often difficult and futile to bring a derivative action against a closely held corporation. As explained by one authority, "[e]ven if a minority shareholder overcomes procedural hurdles in a derivative action, a strong disadvantage is that any recovery accrues to the corporation and hence remains under the control of the very parties who may have been defendants in the litigation." 2 O'Neal and Thompson, O'Neal's Close Corporations § 8.11, p. 122 (3d ed.1992).
[Richards v. Bryan, supra, 879 P.2d at 647.]
With respect to the § 7.01(d) factors, there is no risk of multiple suits if Mrs. Brown continues this action. Nor is there any suggestion in the record that Brown Roofing has been left with assets insufficient to meet its obligations to creditors, who would therefore be prejudiced if Mrs. Brown is permitted to recover damages that otherwise are due the corporation. There is no risk of an unfair distribution of any recovery, since the only remaining shareholder, Mr. Brown, has clearly consented to Mrs. Brown continuing this action. Finally, this case does not present as a "strike suit," one of the dangers the derivative suit standing rules have been designed to combat. See Drain v. Covenant Life Ins. Co., 454 Pa.Super. 143, 685 A.2d 119, 126 (1976), aff'd, 551 Pa. 570, 712 A.2d 273 (1998).
Plaintiff's claims against Terri Brown include breach of fiduciary duty based upon Terri Brown's actual or de facto status as chief operating officer. Cf. Grato v. Grato, 272 N.J.Super. 140, 639 A.2d 390 (App.Div.), certif. denied, 138 N.J. 264, 649 A.2d 1285 (1994). Even if Terri Brown had been merely an employee, her duty of loyalty prohibited soliciting customers for a competing entity while so employed. See AYR Composition, Inc. v. Rosenberg, 261 N.J.Super. 495, 503-05, 619 A.2d 592 (App.Div.1993).
We express no opinion on the ultimate merit of plaintiff's claims. We see merit, however, in plaintiff's contention that it would be inequitable to allow Terri Brown and Brown and Guarino to avoid answering for their conduct by invoking rules of standing that have been developed to meet concerns not present here. As a matter of equity we conclude that Eleanore should be permitted to proceed by way of a direct action. See, e.g., Kirk v. First Nat'l Bank of Columbus, 439 F.Supp. 1141, 1148-49 (M.D.Ga.1977) (former shareholders in a defunct corporation who did not have standing to bring a derivative action, and who had received reduced price for their shares because of former president's misappropriation of funds, were permitted to bring a direct action).
The trial judge ruled as a matter of law, and not as an exercise of discretion, that Mrs. Brown had no standing. We have adopted the approach of the ALI's § 7.01(d), and we are satisfied on this record that it would be a mistaken exercise of discretion to dismiss the case on standing grounds.
We decline to rule on the proper placement of the burden of persuasion at trial, except to hold that the trial judge is not bound by the law-of-the-case doctrine, *1218 which is clearly discretionary. Lombardo v. Hoag, 269 N.J.Super. 36, 49, 634 A.2d 550 (App.Div.1993), certif. denied, 135 N.J. 469, 640 A.2d 850 (1994). Until the plaintiff's proofs are before the court, it would be premature to determine whether what is normally a plaintiff's burden should be shifted to the defendants. Moreover, keeping in mind that where the burden of proof in a civil case is by the preponderance of the evidence, the burden is simply a tie-breaking rule, to be invoked only if the evidence is in equipoise at the close of all the proofs. There is therefore no need for an in limine ruling on the issue.
We reverse and remand for further proceedings consistent with this opinion.
NOTES
[1] The record is not clear with respect to whether Terri Brown was elected or served de facto as a director or officer during a period when she owned one or more shares transferred to her by Mr. Brown.
[2] Mrs. Brown's expert witness testified that the value of the business diminished from $737,000 as of June 30, 1990 to $396,000 as of June 30, 1991, and that the business had lost $200,000 in gross profits as a result of specific contracts diverted to Brown and Guarino. His 1990 value was disputed by Mr. Brown's expert.
[3] For that reason, we refer to Eleanore Brown as "plain tiff" and Terri Brown and Brown and Guarino as defendants in this opinion.
[4] We recognize New Jersey case law holding that a tort claim that has not been reduced to judgment is not assignable. DiTolvo v. DiTolvo, 131 N.J.Super. 72, 79, 328 A.2d 625 (App.Div.1974) and cases cited therein. See also Village of Ridgewood v. Shell Oil Co., 289 N.J.Super. 181, 195, 673 A.2d 300 (App.Div.1996); Integrated Solutions, Inc. v. Service Support Specialties, Inc., 124 F.3d 487, 490 (3d Cir.1997). Plaintiff does not rely upon that assignment as the basis for standing, and we need not determine whether the non-assignability rule applies. Assuming the assignee could not rely upon the assignment as the basis for its standing to sue the tortfeasor, that fact does not affect any other ground upon which the assignee could proceed against the tortfeasor. Moreover, the rule's purpose is not to shield a tortfeasor from liability for its own negligently caused injury.