NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0241-17T1

RICHARD W. TULLY, JR.,

      Plaintiff-Appellant,

v.

PETER MIRZ,

      Defendant-Respondent.

_____

<div style="border:1px solid black;">

**APPROVED FOR PUBLICATION**

**November 29, 2018**

**APPELLATE DIVISION**

</div>

Submitted October 16, 2018 – Decided  November 29, 2018

Before Judges Fisher, Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5951-16.

Philip E. Mazur, attorney for appellant.

The Weinstein Group, PC, attorneys for respondent (Lloyd J. Weinstein, on the brief).

The opinion of the court was delivered by

GEIGER, J.A.D.

Plaintiff Richard W. Tully, Jr. and defendant Peter Mirz were the sole shareholders of a closely-held corporation they jointly started known as Interstate Fire Protection, Inc. (IFP).  Plaintiff and defendant, who are brothers-in-law, did

not initially sign a written agreement stating how profits and losses would be shared, though for the first five years of the business they took an equal salary. When IFP began experiencing financial difficulties, plaintiff contributed significant funds to pay its expenses. Eventually, IFP defaulted on a loan from TD Bank, N.A., and judgment was entered against it in the State of New York.

After the parties were unable to reach an agreement concerning their respective contributions to IFP's debts, plaintiff filed suit to recover fifty-percent of the "substantial contributions" he and his other company made to IFP to cover its shortfalls. Plaintiff appeals from an August 28, 2017 order dismissing his complaint against defendant without prejudice following a one-day bench trial. For the following reasons, we affirm in part and reverse and remand in part.

In 2005, plaintiff and defendant formed IFP, a fire protection contractor serving primarily commercial customers, as a partnership. Two years later they incorporated the business in New York. Each party made an initial $35,000 investment in IFP, and were paid equal salaries during IFP's first five years.

The parties did not initially enter into a written agreement as to how IFP losses would be shared individually. However, they eventually entered into a

Shareholders-Partners Agreement (Agreement) on January 15, 2009.[1]  Under the Agreement, plaintiff and defendant are equally responsible for IFP's liabilities, "unless the losses are occasioned by the willful neglect or default, and not the mere mistake or error, of any of the parties."

Plaintiff had substantial prior experience in the construction industry and had previously formed Interstate Mechanical Services, Inc. (IMS), which provided HVAC-related mechanical contracting services to its clients. Plaintiff brought his name, reputation, and client contacts to IFP.  He continued to own and operate IMS in conjunction with IFP.  Defendant had no role in IMS.

Defendant worked in the fire protection field prior to forming IFP, and was licensed to perform that trade, but had no prior experience owning a business.  Defendant was responsible for running IFP's day-to-day operations.

In 2008, IFP received a $250,000 line of credit from TD Bank.  The line of credit was later increased to $750,000.  However, financial difficulties eventually led the parties to reduce IFP's line of credit to $450,000 in 2011. Plaintiff, defendant, and IMS each guaranteed repayment of the line of credit when it was initially opened and each time it was modified.

---

[1]  Defendant disputes he signed the agreement and claims his signature was forged.

A-0241-17T1

IFP's financial difficulties led it to default on its obligation to TD Bank. Plaintiff alleges IFP's financial difficulties were caused by defendant's mismanagement and willful neglect, including failure to estimate projects properly and failure to properly mobilize and coordinate IFP's forces. On January 7, 2015, TD Bank filed a collection action against IFP, IMS, plaintiff, and defendant in the Supreme Court of New York, and in April 2016, secured a judgment in the amount of $530,687.40 plus statutory interest (IFP judgment).

Although the IFP judgment held the debtors jointly and severally liable, plaintiff and IMS entered into a settlement agreement with TD Bank, which discharged them from the obligation in exchange for payment of $300,000. Plaintiff and IMS performed and were formally released on October 20, 2016. Defendant and IFP remained liable to TD Bank for the remaining balance of $226,469.40. TD Bank receives payment from defendant through a wage garnishment.

Plaintiff alleges he and IMS extended loans to IFP, or made payments on its behalf, for which they expected to be repaid by IFP. Although payment has been demanded, it has not been remitted.

Plaintiff also alleges that in 2012, defendant sold the assets of IFP to Pace Plumbing Corp. without fully disclosing the terms of the sale to plaintiff,

4

or by misrepresenting the terms of the sale. These claims were withdrawn by plaintiff during the bench trial.

Plaintiff also alleges defendant misappropriated IFP funds by falsifying the time sheets of former IFP employee James Gould in an alleged kickback scheme wherein Gould was paid for overtime he did not perform, with the unearned income being applied to the debt defendant owed Gould on a personal loan from 2010. Plaintiff further alleges defendant converted IFP funds through Gould's bank account in 2012. Finally, plaintiff alleges defendant misused IFP funds for personal expenses, such as excessive payments for company vehicles that were used personally by defendant.

Plaintiff filed a six-count Chancery action against defendant alleging: breach of fiduciary trust (count I); breach of contract (count II); mismanagement (count III); breach of the covenant of good faith and fair dealing (count IV); conversion (count V); and fraud (count VI). Plaintiff demanded judgment against defendant: (1) compelling repayment to IFP of monies wrongfully converted by defendant or compelling defendant to repay to plaintiff his proportionate share; (2) compelling repayment of loans made to IFP or payments made on its behalf or compelling defendant to repay to plaintiff his proportionate share; (3) compelling defendant to comply with all obligations imposed by the Agreement, including the obligation to pay one-

half of IFP's liabilities and debts; (4) for compensatory, consequential, and incidental damages; and (5) for interest, attorney's fees, and costs.

Defendant moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 4:6-2(e), or for violation of the single controversy doctrine pursuant to Rule 4:30A. The Chancery judge denied the motion, noting:

> While many of the claims could be characterized as derivative, the court is empowered in a closely held company case to treat an action raising derivative claims as a direct action. Brown v. Brown, 323 N.J. Super. 30, 36-38 (App. Div. 1999). That is sufficient to survive a motion to dismiss.

The case was subsequently transferred to the Law Division. By leave granted, plaintiff filed an amended complaint alleging the same causes of action and seeking the same relief.[2] Defendant moved to dismiss the amended complaint pursuant to Rules 4:6-2(e) and 4:30A. The Law Division judge denied the motion, noting the motion was based on the same arguments raised by defendant in the prior motion to dismiss. The motion judge reasoned:

> The plaintiff has correctly noted that the law of the case doctrine requires this [c]ourt to abide by Judge Contillo's decision.

___

[2] The amended complaint differed from the original complaint by adding the following additional language to paragraph four: "In the alternative and/or in addition, the parties agreed verbally, and/or by their conduct reached an implied agreement, to pay equally on behalf of [IFP] its debts and liabilities."

Judge Contillo did not reach the merits of the defendant's motion to dismiss based upon the Entire Controversy Doctrine and [Rule] 4:30A. He noted that insufficient information had been supplied. That notation leaves this court free to consider that argument.

This court finds itself in the same position. This court has not been supplied with copies of the pleadings in the N.Y. State litigation. This court has no certification establishing a basis for first-hand knowledge as to what is involved in the disputes being litigated in N.Y. State Court.

. . . .

This court has no detail as to the claims involved in the New York State litigation. It is the moving party's obligation to supply that information to this court.

Defendant then filed an answer with affirmative defenses and a four-count counterclaim, alleging fraud (count one), breach of fiduciary duty (count two), conversion (count three), and unjust enrichment (count four).

Following the completion of discovery, the case proceeded to a one-day bench trial. The trial judge issued a written opinion and order dismissing the amended complaint without prejudice for lack of standing, concluding "this action was improperly brought as a direct action against [d]efendant rather than a derivative claim on behalf of IFP." Recognizing the well-established rule "that standing is a firm requirement for all actions brought before a court,

even if the issue is not addressed by [d]efendant," the judge engaged in the following analysis:

> In the instant action, IFP was a closely held organization and therefore subject to the [c]ourt's discretion on whether or not the claims made against [d]efendant should be considered direct [or] derivative. Because the interests of IFP's creditors would be materially prejudiced by allowing [p]laintiff to directly recover from [d]efendant, this [c]ourt is precluded from treating this matter as a direct action and must hold that [p]laintiff has no standing to bring this action against [d]efendant.
>
> Plaintiff seeks to recover funds directly from [d]efendant, as an individual, despite the fact that the injury he claims appears to be suffered by IFP. The funds supposedly mismanaged, converted and siphoned by the [d]efendant were clearly IFP company funds. Thus, the allege[d] injury sustained by the [d]efendant's actions effected the company as a whole and did not represent a "special injury" to [p]laintiff as an individual. Additionally, most of the funds advanced by [IMS] to IFP were carried as loans from [IMS] to IFP on [IMS's] records. Accordingly, it is [IMS] that needs to file a complaint based on the breach of the loan agreements.
>
> Although this [c]ourt does have the discretion to treat [p]laintiff's claim as a direct action since IFP was a closely held corporation, the fact that IFP has creditors who are still seeking recovery from IFP funds precludes [p]laintiff's recovery as an individual. Allowing [p]laintiff to personally recover funds that were assets of the corporation could affect the recovery of the existing judgment creditor, TD Bank, and potential future judgment creditor, Ideal Supply Co.

A-0241-17T1

This appeal followed.  Plaintiff argues:

POINT I

THE COURT ERRONEOUSLY FOUND THAT ALL OF [PLAINTIFF]'S CLAIMS ARE DERIVATIVE CLAIMS EVEN THOUGH [PLAINTIFF] WAS DAMAGED DIRECTLY BY DEFENDANT'S MISCONDUCT, INCLUDING DEFENDANT'S BREACH OF THE PARTIES' AGREEMENT.

POINT II

EVEN IF THE CLAIMS ARE DERIVATIVE, THERE IS NO REASONABLE BASIS FOR IMPOSING THE PROCEDURAL BURDENS THAT APPLY TO A DERIVATIVE ACTION WHERE BOTH SHAREHOLDERS ARE PARTIES AND THE DERIVATIVE CLAIMS PROCEDURES DO NOT SERVE ANY REASONABLE PURPOSE.

POINT III

THE TRIAL COURT SHOULD HAVE ALLOWED THE CLAIMS TO PROCEED INDIVIDUALLY UNDER THE LAW OF THE CASE DOCTRINE.

The issue of standing is a matter of law that we review de novo.  People for Open Gov't v. Roberts, 397 N.J. Super. 502, 508 (App. Div. 2008).   "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"Our courts have traditionally taken a generous view of standing in most contexts."  In re State Contract A71188, 422 N.J. Super. 275, 289 (App. Div.

2011) (citations omitted); see Rule 4:26-1 (requiring plaintiffs to be "real party in interest"). To have standing to bring a claim, "a party must present a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and a substantial likelihood that the party will suffer harm in the event of an unfavorable decision." In re Camden County, 170 N.J. 439, 449 (2002).

Plaintiff first contends the trial court erred by finding all of his claims were derivative of IFP rather than direct. Plaintiff further contends, even if the claims are derivative, the trial court should have allowed them to proceed directly because of the closely-held nature of IFP. The trial court relied on the determination that all of plaintiff's claims were derivative to conclude plaintiff was without standing to proceed.

"A corporation is regarded as an entity separate and distinct from its shareholders." Strasenburgh v. Straubmuller, 146 N.J. 527, 549 (1996) (citing Dep't of Labor v. Berlanti, 196 N.J. Super. 122 (App. Div. 1984)). "[R]egard for the corporate personality demands that suits to redress corporate injuries which secondarily harm all shareholders alike are brought only by the corporation." Ibid. (quoting Note, Distinguishing Between Direct and Derivative Shareholders' Suits, 110 U. Pa. L. Rev. 1147, 1148 (1962)). New Jersey follows the American rule, which provides shareholders who suffer an

injury "may not recover for the injury to [their] stock alone, but must seek recovery derivatively [on] behalf of the corporation." Id. at 550 (citing Cowin v. Bresler, 741 F.2d 410, 414 (D.C. Cir. 1984)). "Only upon proof of fraud or injustice will the corporate veil be pierced to impose liability on the corporate principals." Berlanti, 196 N.J. Super. at 127 (citing Lyon v. Barrett, 89 N.J. 294, 300 (1982)).

The purpose of a derivative suit is to provide shareholders, or a representative shareholder, with "a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" Strasenburgh, 146 N.J. at 548-49 (quoting Kamen v. Kemper Financial Servs., Inc., 500 U.S. 90, 95 (1991)). By contrast, a direct action is one in which liability is based upon an injury or violation of a duty owed to a particular shareholder. Brown v. Brown, 323 N.J. Super. 30, 36 (App. Div. 1999) (citation omitted). "To determine whether a complaint states a derivative or an individual cause of action, courts examine the nature of the wrongs alleged in the body of the complaint, not the plaintiff's designation or stated intention." Strasenburgh, 146 N.J. at 551 (citing Lipton v. News Int'l, PLC, 514 A.2d 1075, 1078 (Del. 1986)).

A shareholder may maintain a direct action against a corporation or its directors if the shareholder suffers a "'special injury.'" Ibid. (citing Elster v.

American Airlines, Inc., 100 A.2d 219 (Del. Ch. 1953)). "A special injury exists 'where there is a wrong suffered by [the] plaintiff that was not suffered by all stockholders generally or where the wrong involves a contractual right of the stockholders, such as the right to vote.'" Id. at 550 (quoting In re Tri-Star Pictures, Inc., 634 A.2d 319, 330 (Del. 1993)).

In the context of a closely-held corporation, courts have discretion to construe a derivative cause of action as a direct claim if doing so "will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." Principles of Corporate Governance: Analysis and Recommendations, § 7.01 (d) (Am. Law Inst. (1992)). See also Brown, 323 N.J. Super. at 39 ("adopt[ing] the approach of the ALI's § 7.01(d)").

The factors enumerated in § 7.01(d) follow the holding in Watson v. Button, 235 F.2d 235 (9th Cir. 1956), "which found the usual policy reasons requiring an action that principally alleges an injury to the corporation to be treated as a derivative action are not always applicable to the closely held corporation." Principles, § 7.01 cmt. e. In Watson, a multiplicity of actions could not have resulted because there were only two shareholders; each shareholder had agreed to be individually liable for corporate debts; and an

12

individual recovery would not have prejudiced the rights of any other shareholders. 235 F.2d at 237.

The main consequence of construing an action as direct is to relieve the plaintiff of the procedural requirements that attend a derivative suit. For example, in a derivative suit, a would-be plaintiff is required to issue demand upon the corporation to take action and to then allow ninety days to elapse, unless notified the demand was rejected by the corporation, prior to commencing a derivative suit. N.J.S.A. 14A:3-6.3. In this case, plaintiff would be required to issue demand on defendant, which would almost certainly be futile. Further frustrating the procedural purpose of a derivative suit, defendant asserted counterclaims against plaintiff, and "the general rule is to prohibit counterclaims in a derivative action." Principles, § 7.01 cmt. e (citing Welch, Shareholder Individual and Derivative Actions: Underlying Rationales & the Closely Held Corporation, 9 J. Corp. L. 147, 190-91 (1984)).

Some of the wrongs alleged by plaintiff are direct claims. For example, at its core, plaintiff's claim is founded on defendant's failure to contribute his fair share (fifty percent) to the debts and liabilities of IFP, in breach of an alleged agreement between the parties and the covenant of good faith and fair

dealing. (counts II and IV).[3]  Plaintiff, unlike IFP, is a party to the Agreement and, therefore, has standing for this claim as an interested party.  See Sean Wood v. Hegarty Grp., Inc., 422 N.J. Super. 500, 519 (App. Div. 2011) (finding corporation lacked standing to pursue counterclaim for lost profits on alleged breach of contract when evidence demonstrated principal of the corporation had been the real party in interest on the contract).

However, plaintiff's other claims weigh more in favor of a derivative action on behalf of IFP.  For example, the mismanagement claim (count III) is grounded in the assertion that defendant failed to manage IFP in a commercially reasonable manner.  Additionally, the conversion claim (count V) and fraud claim (count VI) allege defendant "exercised wrongful dominion and control over the assets of [IFP]" and engaged in a fraudulent kickback scheme.  These claims are derivative in nature because they concern IFP's assets and operations rather than plaintiff as an individual.  Plaintiff partially withdrew his claims of mismanagement (count III) and fraud (count VI) at trial

---

[3]  See Principles, § 7.01 cmt. c (explaining decisions in both Delaware and New York have held an action may be treated as direct in circumstances in which there was a special dual relationship between plaintiff and defendant, such as a contractual relationship, or in which the latter acted with deliberate intent to harm the former) (citing the holding in Elster, 100 A.2d 219).

to the extent they pertain to the agreement to sell IFP's assets to Pace Plumbing Corp.

These claims are captured by the breach of fiduciary duty claim (count I), which we "generally regard[] as derivative claims unless the injury to shares is distinct." Strasenburgh, 146 N.J. at 552 (citation omitted). However, "[i]f the breach of duty causes a 'special injury,' shareholders may sue directly." Ibid.

Returning to the factors enumerated in Principles, § 7.01(d) and adopted by Brown, other shareholder interests would not be harmed if these claims proceed because plaintiff and defendant are the only shareholders. Thus, this court need only consider whether, as the trial court held, the rights of IFP's creditors would potentially be materially prejudiced if plaintiff's derivative claims are allowed to proceed as a direct action.

As previously discussed, TD Bank has reduced its claims against defendant and IFP to judgment and collects on a wage garnishment against defendant. On this record we are unable to determine if allowing plaintiff's derivative claims to proceed will prejudice TD Bank, Ideal Supply, or any other creditor of IFP. Therefore, the trial court properly declined to construe plaintiff's derivative claims as a direct action. We affirm the dismissal without prejudice of plaintiff's derivative claims, which include his breach of fiduciary

15

duty claim (count I) and the mismanagement, conversion, and fraud claims (counts III, V, and VI, respectively).

That said, the discretion granted by Brown and § 7.01(d) does not run both ways. Plaintiff's essential claim is for breach of contract, to which he and defendant are the sole parties. We discern no principle of law that prevents plaintiff from bringing this direct action against defendant. Accordingly, we reverse the dismissal of plaintiff's direct claims based on breach of contract (count II) and breach of the covenant of good faith and fair dealing (count IV), and remand those claims to the trial court for a decision on the merits.

Tully also argues the trial court should have allowed his derivative claims to proceed pursuant to the law of the case doctrine based on the prior motion rulings. We are unpersuaded by this argument.

The law of the case doctrine provides "that a legal decision made in a particular matter 'should be respected by all other lower or equal courts during the pendency of that case.'" Lombardi v. Masso, 207 N.J. 517, 538 (2011) (quoting Lanzet v. Greenberg, 126 N.J. 168, 192 (1991)). "A hallmark of the law of the case doctrine is its discretionary nature. . . ." Ibid. (citations omitted). "It is a non-binding rule intended to 'prevent relitigation of a previously resolved issue.'" Ibid. (quoting In re Estate of Stockdale, 196 N.J. 275, 311 (2008) (citing Pressler, Current N.J. Court Rules, cmt. 4 on R. 1:36-3

(2008))). The "doctrine is only triggered when one court is faced with a ruling on the merits by a different and co-equal court on an identical issue." Id. at 539.

Our courts treat the denial of a motion to dismiss as interlocutory. Parker v. City of Trenton, 382 N.J. Super. 454, 457 (App. Div. 2006); see also GMAC v. Pittella, 205 N.J. 572, 577 n.2 (2011) (citing Parker, 382 N.J. Super. at 458).

The denial of defendant's motions to dismiss did not constitute a ruling on the merits of whether plaintiff's claims were derivative or direct. Nor did those rulings adjudicate whether the court should exercise its discretion to treat the action raising derivative claims as a direct action under Brown. The rulings were not dispositive. Rather, the rulings merely decided that Tully's claims were "sufficient to survive a motion to dismiss."

The trial judge based his decision upon the evidence adduced at trial following discovery, not the facts as alleged in the amended complaint. The testimonial evidence presented at trial was not available when either of the motions to dismiss were decided. The law of the case doctrine does not require a trial judge to follow a prior motion ruling by a different judge if presented with "substantially different evidence." Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 1:36-3 (2019) (citing State v. K.P.S.,

17

221 N.J. 266, 276 (2015)); cf. State v. Cullen, 424 N.J. Super. 566, 579-80 (App. Div. 2012) (holding a judge deciding a motion for summary judgment based upon evidence developed during discovery is not bound to adhere to the preliminary assessment of the facts as alleged in the complaint made by a different judge when deciding an earlier Rule 4:6-2(e) motion). The trial judge was not bound to follow the motion judges' preliminary assessments of the facts or rulings.

In sum, we hold plaintiff had standing to bring his breach of contract (count II) and breach of the covenant of good faith and fair dealing (count IV) claims. We reverse the dismissal of counts II and IV and remand those claims to the trial court for a decision on the merits. We affirm the dismissal without prejudice of plaintiff's remaining derivative claims (counts I, III, V, and VI).

Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0241-17T1