**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0441-22

SHANE FLYTE, JOHN MEENA,
FRANK BILOTTA, JORDAN
KLEGA-FISCHER, STEVE
LAMBIASE, and DAVIDE
MOREIRA, Individually, and as
Members on behalf of HBI
CAPITAL PARTNERS LLC and
HUDSON BLACK INC.,

     Plaintiffs-Respondents,

v.

JONATHAN P. BAKER,

     Defendant-Appellant,

and

AMANDA RAE NORCIA-
BAKER,

     Defendant.

_____

Argued October 9, 2024 – Decided January 9, 2025

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Sussex County, Docket No. C-000002-18.

Jonathan P. Baker, appellant, argued the cause pro se.

John D. Coyle argued the cause for respondents (Coyle Law Group, P.C., attorneys; John D. Coyle, on the brief).

PER CURIAM

In this corporate misconduct action, defendant Jonathan P. Baker appeals from a judgment entered on August 26, 2022, in favor of Shane Flyte, John Meena, Frank Bilotta, Jordan Klega-Fischer, Steve Lambiase and Davide Moreira, collectively, plaintiffs. When defendant failed to appear for trial on plaintiffs' fraud complaint, the judge converted the trial to a proof hearing,[1] after which plaintiffs were awarded over $4.7 million in compensatory damages based on fraudulent transfers of funds from Hudson Black Inc. (HBI) to various entities owned by defendant or in which defendant had a major interest.

---

[1] See EnviroFinance Grp. v. Env't Barrier Co., 440 N.J. Super. 325, 343 (App. Div. 2015) (explaining that Rule 4:43-2(b) "grants a trial court the discretion" to conduct a proof hearing to determine "the quantum of damages as well as entitlement to relief, prior to entry of default judgment").

2

The parties all worked at HBI and had ownership interests in the company. HBI was owned by HBI Capital Partners LLC (HCP), in which the parties each also had an ownership interest. At the conclusion of the proof hearing, the judge found overwhelming evidence that over a two-year period, defendant engaged in a pattern of willful fraud and deceit by borrowing funds from HBI for his five companies with no intention of repaying the loans, falsifying HBI documents to obtain financing for his companies, and drafting a repurchase agreement without authorization transferring all of plaintiffs' interests in HBI to his then wife, Amanda Rae Norcia-Baker (Norcia).

On appeal, defendant primarily challenges plaintiffs' entitlement to damages as well as the quantum of damages awarded, arguing plaintiffs lacked standing because they should have brought a derivative action on behalf of HBI/HCP, instead of a direct action against him. Defendant also raises procedural arguments, challenging the addition of HBI as a named party at the conclusion of the hearing, the judge's failure to conduct oral argument on two motions for summary judgment, and the entry of a stipulation of dismissal as to Norcia without defendant's consent. Based

3

on our thorough review of the record and applicable legal principles, we affirm.

I.

We glean these facts from the hearing record. HCP was incorporated on January 28, 2015, as a subchapter S corporation. HCP's operating agreement, which was executed on January 31, 2015, listed defendant as its member/manager. Plaintiffs and two non-parties, Afif Mohammed and Stephen Vroman, were listed as members. Under the operating agreement, the manager could "bind the [c]ompany" but only if the other members agreed.

Defendant, plaintiffs, Mohammed, and Vroman each invested about $3,000 and held about a ten percent interest in HCP. Defendant was president of the executive committee, and Klega-Fischer was the corporate secretary. The operating agreement specified that no members could "assign their membership interest in the company without a [two-thirds] majority vote of the remaining [m]embers."

HCP's operating agreement further stated that its primary purpose was

> to hold 100% of the voting and equitable interest
> in [HBI] . . . . The [m]embers of the [c]ompany

4

shall, concurrently with their membership, serve as members of the Board of Directors of [HBI], to the extent that each [m]ember is willing and able to do so. All actions taken by [m]embers of the [c]ompany shall be deemed actions taken by the Board of Directors of [HBI], to the extent that they apply to the affairs of [HBI].

HBI, which was incorporated prior to HCP on January 18, 2015,[2] was a general contractor that hired subcontractors to perform commercial renovations of existing spaces. HBI's bylaws, which were effective April 11, 2015, provided that "[n]o loans shall be made by the corporation to the directors, unless first approved by the holders of two-thirds of the voting shares." Defendant and two nonparties, Jillian Baker and William Saks, were named directors of HBI. Defendant was the chief executive officer and president of HBI, Flyte was the vice president, and Klega-Fischer was the corporate secretary. The other plaintiffs were all employees of HBI.

In April 2015, unbeknownst to plaintiffs, defendant and Norcia entered into an agreement whereby Norcia was given the right to repurchase HBI from its parent company, HCP (the repurchase

---

[2] On HBI's certificate of incorporation, Norcia was listed as the incorporator and the sole member of the board of directors.

agreement). Norcia represented in the agreement that she was HBI's sole shareholder. In a May 31, 2018 certification by defendant that was introduced at the hearing, defendant claimed that he and Norcia had invested $125,000 "to start [HBI]." Plaintiffs did not learn of the repurchase agreement until January 2018.

After Vroman withdrew from participation in HCP, an amended operating agreement dated July 1, 2015, was executed for HCP. In the amended agreement, the remaining eight shareholders were designated as members. The amended agreement also specified that as of July 1, 2015, HCP "own[ed] 100% of the outstanding capital stock of [HBI]." The companies operated out of the same office.

During this time period, defendant held ownership interests in five other companies as follows: (1) 100% of BSG New Jersey LLC (BSG); (2) 100% of Konoba LLC (Konoba); (3) 100% of J Paul Allen Inc. (JPA); (4) 50% of 8 Quaker Road LLC; and (5) 31.25% of Arley Farms LLC (Arley Farms). Between 2015 and 2016, defendant entered into loan agreements with each of these companies on behalf of HBI without informing or discussing the loans with HBI's board or HCP's executive committee. Defendant prepared financial statements on behalf of HBI and

6

HCP without listing the loans. None of defendant's five companies paid interest to HBI on the loans or made any payments toward the loans and none of the companies did business with either HCP or HBI. While defendant transferred funds from HBI to his companies, he failed to pay federal payroll taxes on behalf of HBI.

In his deposition that was admitted into evidence, defendant acknowledged the loans but stated that as the president and chief financial officer of HBI, he believed he had the authority to enter into such loan agreements with his companies without consulting the other members of HCP or HBI shareholders. Relying on the repurchase agreement, defendant believed it was in the scope of his authority as chief financial officer and director of HBI to enter these loan agreements.

The two witnesses who testified for plaintiffs, Bilotta and Klega-Fischer, contradicted defendant's account. Klega-Fischer testified that the loans required approval from the HCP and HBI executive committees prior to their execution. However, the loan documents were never presented to either committee and neither Bilotta nor Klega-Fischer was aware of the transactions until the lawsuit was filed. Bilotta acknowledged that HBI had experienced some cash flow issues over the

A-0441-22

years but was unaware that defendant was simultaneously wiring large sums from HBI's accounts to defendant's companies. When plaintiffs learned of the loan agreements, they filed demands for arbitration on behalf of HBI, ultimately obtaining arbitration awards that led to the entry of judgments on the loans.

On January 15, 2018, defendant sent an email to plaintiffs terminating their employment with HBI because, among other reasons, they had demanded "immediate and unrestricted" access to HBI's financial records, sought to add additional signatories to the company's bank accounts, and made threats to call the police on defendant. Defendant also locked plaintiffs out of the office, essentially ending the company's operation.

On January 19, 2018, individually and on behalf of HCP, plaintiffs filed a verified complaint against defendant and Norcia seeking damages and injunctive relief. The complaint, which was subsequently amended, alleged the following: fraud (count one); breach of fiduciary duty (count two); breach of HCP's operating agreement and HBI's by-laws (count three); conversion (count four); unjust enrichment (count five); recission

A-0441-22

of the repurchase agreement (count six); and piercing the corporate veil of defendant's and Norcia's business holdings (count seven).

Norcia and defendant were divorced on March 4, 2020. In the divorce judgment, Norcia relinquished all rights to any company, corporation, or business entity created by either defendant or her between 2010 and 2019.

Over the course of the litigation,[3] the trial court entered various orders enjoining defendant from transferring ownership of HBI to Norcia, compelling defendant to produce HBI's books and records,[4] removing defendant as manager of HCP, and appointing Bilotta as manager. In a June 10, 2020, order, the court granted plaintiffs' motion for partial summary judgment as to liability on the counts asserting breach of fiduciary duty, breach of the operating agreement and by-laws, and rescission of the repurchase agreement, reserving damages for

---

[3] The proceedings were stayed for some time after defendant filed a bankruptcy petition.

[4] When plaintiffs finally received HBI's books and records from defendant, an audit trail revealed numerous altered transaction entries occurring after the entry of the court order requiring production of the records to make it appear as if less money had been transferred to defendant's five companies.

9

determination at trial. The court also ordered defendant removed as a member of HCP and denied his cross-motion for partial summary judgment on the rescission count.

After Norcia certified that she had no objection to the court granting plaintiffs' partial summary judgment motion and rescinding the repurchase agreement, a stipulation and order of dismissal with prejudice as to all claims was entered between plaintiffs and Norcia on June 15, 2020, dismissing her from the action. See R. 4:37-1(a) (allowing a plaintiff to dismiss an action without court order "by filing a stipulation of dismissal specifying the claim or claims being dismissed, signed by all parties who have appeared in the action"). Defendant did not sign the stipulation of dismissal.

At the conclusion of the proof hearing, in a comprehensive written opinion, the court determined that plaintiffs had proven fraud "by clear and convincing evidence." Crediting Klega-Fischer's and Bilotta's testimony, which was supported by the documentary evidence, the court found:

> The admissible evidence overwhelmingly demonstrates [defendant] engaged in a pattern of willful fraud and deceit . . . to borrow funds from HBI for his five . . . companies, with no intention

A-0441-22

of paying these loans back. [Defendant] falsified HBI documents to obtain financing for his . . . companies and drafted a [r]epurchase [a]greement transferring all of plaintiffs' interests in HBI to his wife. When ordered by the court to produce the books and records of the companies for a third time, [defendant] falsified the books and records, perpetrating a fraud on the court.

. . . The record is replete with evidence of [defendant's] egregious fraud. [Defendant] gave himself sole access to HBI accounts. . . . He regularly reported the accounts contained money that he had transferred to his . . . companies. . . . He falsified corporate records . . . to obtain funding for his . . . companies, using HBI to secure the funding and to pay back the loans. He failed to disclose the . . . five loan agreements to the Board of Directors or anyone at HBI.

The court further found that defendant used HBI as his "personal piggy bank to pay his . . . companies' bills." According to the court, "[defendant] knowingly transferred over $4.7 million . . . out of HBI, which he knew should not have been taken from the company." As for damages, the court explained:

The court took judicial notice, with [defendant's] consent, of the four orders and judgments entered against [defendant's] companies at arbitration: $136,759.83 against 8 Quaker Road, $294,653.90 against Arley Farms, $133,819.09 against Konoba, and $915,932.63 against BSG. Plaintiffs proved at trial [defendant] transferred $1,481,165.44 . . . from

11

HBI to Konoba, Arley Farms, 8 Quaker Road, and BSG. Plaintiffs further proved they are owed $3,275,967.71 for transfers made by [defendant] from HBI to JPA for a total of $4,757,133.15 in compensatory damages.[5]

The court entered a memorializing order on June 23, 2022.

Thereafter, defendant moved for reconsideration of the June 23 order or, alternatively, to amend or vacate the judgment, arguing, among other things, that plaintiffs lacked standing to bring the action. Plaintiffs opposed defendant's motion and cross-moved to amend the complaint. In an August 8, 2022, order, the court denied defendant's motion and granted plaintiffs' cross-motion to amend the complaint to conform to the evidence by adding HBI as a party.

In the accompanying statement of reasons, the court rejected as "specious" defendant's assertions that he had no notice of the trial and that he believed the matter had been dismissed. In support, the court referred to an email defendant had sent to plaintiff's counsel the morning of the trial stating "on the advice of counsel, I will not be participating in the trial."

---

[5] The court ordered an offset of $39,600, representing the value of defendant's membership interest in HCP.

12

Previously, defendant had unsuccessfully moved to stay the trial pending resolution of his federal criminal case in which he was charged for the same conduct. In denying the stay, the court applied the principles enunciated in State v. Kobrin Sec., Inc., 111 N.J. 307, 314-15 (1988), and concluded a stay was not appropriate.

Final judgment awarding $4,717,533.15 in compensatory damages to plaintiffs was entered on August 26, 2022, and this appeal followed. On appeal, defendant raises the following points for our consideration:

> I. AS A THRESHOLD ISSUE, THE PLAINTIFFS LACKED STANDING TO BRING THIS ACTION AND, THEREFORE, THE JUDGMENT OF THE TRIAL COURT CANNOT STAND AS A MATTER OF LAW.
>
> II. THERE IS NO EVIDENCE IN THE RECORD TO SUPPORT THE CLAIM THAT THE ORIGINAL PLAINTIFFS SUFFERED ANY DAMAGES WHATSOEVER.
>
> III. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO CONSIDER THE IMPACT THAT THE PASSAGE OF TIME HAD ON THE PLAINTIFFS' CALCULATION OF DAMAGES.
>
> IV. THE TRIAL COURT ERRED IN PERMITTING PLAINTIFFS TO AMEND THEIR COMPLAINT.

13

A. Amending A Complaint To Add A Proper Party Does Not Cure An Issue Of Standing.

B. The Trial Court Had Already Set A Deadline To Amend To Rectify Any Issues With The Names Of The Parties To The Lawsuit, And Plaintiffs Affirmatively Stated That They Did Not Need To Make Any Amendments.

C. Adding A Plaintiff To An Action—Not Merely After Filing The Initial Complaint But, In This Case, After A Trial And The Subsequent Entry Of Judgment Against The Defendants—Denies The Defendants Due Process And The Ability To Defend Themselves.

V. THE TRIAL COURT ERRED IN ENTERING A STIPULATION OF DISMISSAL WITHOUT THE CONSENT OF ALL PARTIES.

VI. THE TRIAL COURT ERRED BY FAILING TO HEAR ORAL ARGUMENT ON TWO SEPARATE SUMMARY JUDGMENT MOTIONS.

VII. THE PLAINTIFFS ACTUALLY ADMITTED THAT THE DAMAGES THEY WERE CLAIMING AS THEIR OWN RIGHTFULLY BELONGED TO [NONPARTY] HBI.

II.

In Point I, defendant argues plaintiffs lacked standing under corporate law to bring a direct action against him because the action should have been brought as a derivative action on behalf of the company.

"[S]tanding is a matter of law that we review de novo." Tully v. Mirz, 457 N.J. Super. 114, 123 (App. Div. 2018). To have standing to bring an action, a party must "present a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and a substantial likelihood that the party will suffer harm in the event of an unfavorable decision." In re Camden County, 170 N.J. 439, 449 (2002). "Our courts have traditionally taken a generous view of standing in most contexts." In re N.J. State Contract A71188, 422 N.J. Super. 275, 289 (App. Div. 2011).

Because "[a] corporation is regarded as an entity separate and distinct from its shareholders," standing in the corporate context recognizes both a derivative and an individual cause of action. Tully, 457 N.J. Super. at 123-24 (quoting Strasenburgh v. Straubmuller, 146 N.J. 527, 549 (1996)).

> The purpose of a derivative suit is to provide shareholders, or a representative

shareholder, with "a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" Strasenburgh, 146 N.J. at 548-49 (quoting Kamen v. Kemper Fin[.] Servs., Inc., 500 U.S. 90, 95 (1991)). By contrast, a direct action is one in which liability is based upon an injury or violation of a duty owed to a particular shareholder. Brown v. Brown, 323 N.J. Super. 30, 36 (App. Div. 1999) (citation omitted). "To determine whether a complaint states a derivative or an individual cause of action, courts examine the nature of the wrongs alleged in the body of the complaint, not the plaintiff's designation or stated intention." Strasenburgh, 146 N.J. at 551 (citing Lipton v. News Int'l, PLC, 514 A.2d 1075, 1078 (Del. 1986)).

[Tully, 457 N.J. Super. at 124.]

For a closely-held corporation,

courts have discretion to construe a derivative cause of action as a direct claim if doing so "will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." Principles of Corporate Governance: Analysis and Recommendations, § 7.01(d) (Am. [L.] Inst. (1992)) [hereinafter Principles][;] [s]ee also Brown, 323 N.J. Super. at 39 ("adopt[ing] the approach of the ALI's § 7.01(d)").

The factors enumerated in § 7.01(d) follow the holding in Watson v. Button, 235 F.2d 235 (9th Cir. 1956), "which found [that] the usual

16

policy reasons requiring an action that principally alleges an injury to the corporation to be treated as a derivative action are not always applicable to the closely held corporation." Principles, § 7.01 cmt. e. In Watson, a multiplicity of actions could not have resulted because there were only two shareholders; each shareholder had agreed to be individually liable for corporate debts; and an individual recovery would not have prejudiced the rights of any other shareholders. 235 F.2d at 237.

The main consequence of construing an action as direct is to relieve the plaintiff of the procedural requirements that attend a derivative suit. For example, in a derivative suit, a would-be plaintiff is required to issue demand upon the corporation to take action and to then allow ninety days to elapse, unless notified the demand was rejected by the corporation, prior to commencing a derivative suit. N.J.S.A. 14A:3-6.3. In this case, plaintiff would be required to issue demand on defendant, which would almost certainly be futile. Further frustrating the procedural purpose of a derivative suit, defendant asserted counterclaims against plaintiff, and "the general rule is to prohibit counterclaims in a derivative action." Principles, § 7.01 cmt. e (citing [John C.] Welch, Shareholder Individual and Derivative Actions: Underlying Rationales & the Closely Held Corporation, 9 J. Corp. L. 147, 190-91 (1984)).

[Tully, 457 N.J. Super. at 125-26 (fourth alteration in original).]

A-0441-22

"[T]he concept of a corporate injury that is distinct from any injury to the shareholders approaches the fictional in the case of a firm with only a handful of shareholders."  Brown, 323 N.J. Super. at 37 (quoting Principles, § 7.01 cmt. e).  Thus,

> when a direct action is brought on behalf of the entire class of injured shareholders and the corporation's solvency is not in question, there is less reason to insist that the action be brought derivatively.  The court should then have equitable power to treat the action as direct if the corporation is closely held, thereby avoiding procedural hurdles that were not designed to apply in such a case.
>
> [Ibid. (quoting Principles, § 7.01 cmt. e).]

Here, we are satisfied there is no principled reason to require a derivative action because neither shareholder nor creditor interests are harmed by proceeding as a direct action.  When the initial complaint was filed, defendant was chief executive officer and president of HBI and manager of HCP.  With the exception of Mohammed, who remains a shareholder, plaintiffs and defendant are the only shareholders.  However, there is no indication in the record that Mohammed objected to plaintiffs filing the action.  Further, because HCP is also a named plaintiff in the

18

action, Mohammed's interests are fairly accounted for by proceeding as a direct action and there is no risk of an unfair distribution of any recovery or a multiplicity of lawsuits. Brown, 323 N.J. Super. at 36.

As such, to bring a derivative action in this matter "would almost certainly be futile." Tully, 457 N.J. Super. at 125. Moreover, defendant had asserted a counterclaim against plaintiffs, which is prohibited in a derivative action. Indeed, defendant had sought a declaratory judgment that the repurchase agreement was valid. Therefore, we are satisfied that under the circumstances, plaintiffs had standing to sue directly and were not required to bring a derivative action.

In points II, III, and VII, defendant argues plaintiffs failed to establish that they were entitled to damages. He adds that any damages belonged to HBI, not plaintiffs.

A damage award will be upheld if it is supported by substantial credible evidence in the record. Leimgruber v. Claridge Assocs., Ltd., 73 N.J. 450, 456 (1977). We will not interfere with the quantum of damages awarded "unless 'it clearly and convincingly appears that there was a miscarriage of justice under the law.'" Baxter v. Fairmont Food Co., 74 N.J. 588, 596 (1977) (quoting R. 4:49-1(a)). That said, a damage award

"should be upset for excessiveness only in clear cases," ibid. (quoting Fritsche v. Westinghouse Elec. Corp., 55 N.J. 322, 330 (1970)), and "the general scope of appellate review of judgments entered in a non-jury case" is deferential, Leimgruber, 73 N.J. at 455.

We are satisfied that the damage award in this case is amply supported by substantial credible evidence in the record and we affirm for the reasons stated in the judge's well-reasoned written opinion. We are also convinced that there was no miscarriage of justice under the law, and we therefore see no basis to intervene.

In Point IV, defendant argues the judge erred in permitting plaintiffs to amend their complaint after trial to add HBI as a party. He maintains that this did not cure plaintiffs' lack of standing and denied him due process. We disagree.

We review a decision on a motion to amend a complaint for abuse of discretion. Bonczek v. Carter-Wallace, Inc., 304 N.J. Super. 593, 602 (App. Div. 1997). "[A]lthough such motions are ordinarily afforded liberal treatment, the factual situation in each case must guide the court's discretion, particularly where the motion is to add new claims or new parties late in the litigation." Ibid. Still, the power to amend "'should be

20

liberally exercised at any stage of the proceedings . . . unless undue prejudice would result.'" Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 457 (1998) (quoting Pressler, Current N.J. Court Rules, cmt. on R. 4:9-1 (1998)).

Rule 4:9-2 authorizes the amendment of pleadings "to conform to the evidence" at trial and allows "any party at any time" to raise the issue by motion "even after judgment." It reads:

> When issues not raised by the pleadings and pretrial order are tried by consent or without the objection of the parties, they shall be treated in all respects as if they had been raised in the pleadings and pretrial order. . . . If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings and pretrial order, the court may allow the pleadings and pretrial order to be amended and shall do so freely when the presentation of the merits of the action will be thereby subserved and the objecting party fails to satisfy the court that the admission of such evidence would be prejudicial in maintaining the action or defense upon the merits.
>
> [Ibid.]

"[B]ut failure so to amend shall not affect the result of the trial of these issues." Ibid.

A-0441-22

In Oscar v. Simeonidis, 352 N.J. Super. 476 (App. Div. 2002), we held that the trial court had jurisdiction over the issue of whether a tenant had the obligation to pay real estate taxes even though the landlord had not made such a claim in his complaint. We explained the issue was raised by the landlord when he opposed the tenant's request for a stay of the trial court's ruling. Ibid. We also noted the parties were afforded the opportunity to present evidence on the issue and the tenant did not object. Id. at 489. Likewise, in Cuesta v. Classic Wheels, Inc., 358 N.J. Super. 512 (App. Div. 2003), where the plaintiff did not expressly claim revocation of the acceptance of a vehicle under the Uniform Commercial Code until his motion for reconsideration, we held that the argument was properly raised because the plaintiff presented evidence at trial supporting his revocation claim. Id. at 517-18.

Here, we discern no abuse of discretion in the judge granting plaintiffs' motion to add HBI as a named party in the final judgment. HBI's role was integral to the proceedings, was clearly delineated throughout the litigation, and conformed to the evidence adduced at the hearing. Indeed, even defendant acknowledges that any damages belonged to HBI, not plaintiffs.

22

In Point V, defendant argues for the first time on appeal that the court erred by granting the stipulation of dismissal as to Norcia because he did not have advance notice of the stipulation. In Point VI, he argues the judge erred in granting partial summary judgment in June 2020 without oral argument despite his request that oral argument be conducted. Neither of these contentions warrant extended discussion. As to the former, "issues not raised below will ordinarily not be considered on appeal unless they are jurisdictional in nature or substantially implicate the public interest." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 339 (2010). Because Norcia's stipulation of dismissal implicates neither issue, we decline to consider it. As to the latter, in opposing plaintiffs' summary judgment motion, defendant expressly asked the court to deny plaintiffs' motion "on the papers." A party is judicially estopped from advocating "a position contrary to a position it successfully asserted in the same or a prior proceeding." Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606 (App. Div. 2000).

To the extent we have not specifically addressed any of defendant's remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

23

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0441-22